## The City of Detroit v. Alexander H. Redfield.

*Controller of the City of Detroit : Official duties: How prescribed : Compensation for services not included within his official duties.* The duties of the Controller of the City of Detroit are prescribed by the charter. In addition to those particularly specified, the Common Council may require him to perform others subject to the provisions of the charter. But this will not authorize the Council to prescribe duties which do not come within the scope, or are in no way subject to the provisions of the charter,—such as are of an entirely different nature from those required by the charter.

The Controller having been appointed the agent of the City to receive certain bounty bonds, and apply them in the manner prescribed by the special act authorizing their issue, is entitled to the same compensation as any other man designated by the Council would have. The services being performed at the request of the City, the law implies a promise to pay what they are reasonably worth.

*Heard October 23. Decided October 28.*

Error to Wayne Circuit.

Redfield, the plaintiff below, brought an action of assumpsit against the City of Detroit, for services rendered as the agent of the City, in receiving certain bounty bonds from the Treasurer of Wayne County, issued under the act of February 4, 1865, entitled "An act to provide for the payment of bounties to volunteers in the military and naval service of the United States," (*Laws of 1865 p. 29.*) and for performing the duties required by the act. The defense was,—that being Controller of the City, he was entitled to no further compensation than his salary as such officer. From the bill of exceptions settled on the trial it appears that:

It was admitted that the plaintiff was Controller of· the city of Detroit, from March 30th, 1864, to January 1st, 1868.

The plaintiff introduced evidence, showing that the plaintiff, in pursuance of resolutions of the Common Council of the city of Detroit, directing and authorizing the Controller, as agent of the city of Detroit, so to do, had prepared, signed, safely kept and accounted for the bonds of the county of Wayne, delivered to the defendant, called soldiers bounty bonds, issued under act 27 of the session laws of the State of Michigan of 1865, to the amount ·of one hundred and fifty-nine thousand dollars.

Also, that in pursuance of like resolutions of the Common Council, plaintiff had negotiated $70,000 of such bonds for cash, and accounted for the proceeds.·

Also, that in pursuance of like resolutions of said Common Council, plaintiff had received, safely kept, and paid out for the defendant in bounties, to volunteers in the military and naval service of the United States $59,260 of the money so received for such bonds, and accounted for the same.

Also, that the plaintiff in pursuance of like resolutions

of the Common Council, had safely kept and paid out as bounties to volunteers in said service, $89,000 of said county bonds, issued as above.

Also, that the plaintiff in pursuance of resolutions of said Common Council, directing and requiring the Controller as agent of the city of Detroit, so to do, and under the provisions and requirements of said act 27 of the Legislature of 1865, gave bonds in the sum of $40,000 as such agent, and independent of his bond as Controller, with good security, as required by said act, and received from the Treasurer of Wayne county the sum of $20,000 in bonds of said county, and safely kept and paid out the same to volunteers as aforesaid, and accounted for the same.

The plaintiff also showed that the services in relation to these bounties were not merely of a ministerial character, but that the plaintiff was required to determine upon proper papers, who were entitled to bounties, and to exercise his judgment and discretion in the matter in hundreds of cases, thus assuming and exercising extraordinary responsibilities for himself and his sureties.

The plaintiff also proved that the regular office hours of the Controller, as fixed by the Common Council of Detroit, were from 9 A. M. to 12 M., and from 2 to 4 P. M., and that to perform the extra services imposed by said act of the Legislature and resolutions of the Common Council aforesaid, a large amount of extra labor, and at least from four to seven hours a day, was imposed, which could not be performed in office hours as above prescribed, in the performance of which labor the health of the plaintiff was broken down and ruined.

Thereupon the counsel for the defendant requested the Court to charge the jury, "That the Controller being an officer, paid an annual salary, he cannot receive extra pay for any services performed by him as Controller, prescribed by the Common Council, relating to the debts and finances of the city."

THE CITY OF DETROIT v. REDFIELD.

In reference to which request, the Court charged the jury as follows: "That is true, gentlemen, that he cannot receive compensation for duties performed as Controller, but the question in this case is, whether these duties were outside of that. Whether these duties performed by the plaintiff in selling these bonds, receiving the money and paying it out, and receiving the bonds from the county, whether that is outside of the official duties required or that can be required by the Common Council of the Controller, and for the purposes of this suit, I charge you that they are outside of those duties."

To which charge the defendant by its counsel excepted, and after the charge aforesaid, the jury returned a verdict in favor of the plaintiff for $800 damages."

*J. P. Whittemore,* for plaintiff in error.

I. There are only two modes known to the charter, by or through which the city can become liable to pay for work or services in excess of the sum of $200 ; one is to pay the salaries of city officers ; the other, by advertising and letting to the lowest bidder.—*City Charter of 1857, Chap. 8,* §§ *12, 17, 18, 19 ; Chap. 5, § 103. Sub. 1.*

II. No assumpsit can be implied to pay an officer of the city any sum beyond his salary, for any service imposed upon such officer.—See *Charter, Chap. 4, § 8–20 ; Chap. 5 § 22 sub. 1 ; Baker v. City of Utica, 19 N. Y. 326 ; 49 Penn. State, 118 ; Wendell v. City of Brooklyn, 29 Barb. 204 ; Charter, Sec. 103. Sub. 1.*

III. No service was imposed upon Redfield, the individual. The service and duty was imposed upon the Controller, the officer of the city, to act as agent of the city under the law. The charge of the Circuit Judge was that Redfield, the individual, was entitled to recover for this service, *beyond his salary* as an officer of the city; and that the Council could not impose this duty upon him as Controller.

Hence, that the law implied an assumpsit to pay beyond the salary. This is clearly erroneous as before shown.

*L. Bishop*, for defendant in error cites:

*Smith Com.*, 491—93; *Atty. Gen. v. State Bank, Harr. Ch. 315; Sibley v. Smith, 2 Mich. 486; Mather v. Tichnor, 13 Mich., 44.*

CHRISTIANCY J.

The facts of this case sufficiently appear in the bill of exceptions. And the first question for our determination is, whether the services performed by the plaintiff came within his official duties as Controller of the city, or were performed by him in that capacity. If properly a part of his official duties as Controller, either when he took the office or afterward imposed, his salary was the only compensation to which he can look, however inadequate.—*People v. Supervisors, 1 Hill, 362; Andrews v. United States, 2 Story's C. C. R. 202; Bussier v. Pray, 7 S. & R., 447; Evans v. City of Trenton, 4 Zab. (N. J.), 764.*

It is admitted these services did not come within the duties of his office as prescribed by the charter, or by any ordinance or resolution of the Council in force prior to the resolution authorizing him as agent of the city to perform these services. If therefore, when performed, they came within his official duties as Controller, they must have been imposed as such either by the act of February 4, 1865, under which the bonds in question were issued, or by the resolution referred to, or by the combined effect of the two.

It is very clear the act of the Legislature had no such effect, and that it imposed no duty upon the Controller, as such. Had the City Treasurer received these bonds and performed the services there would have been more plausible ground for holding him bound to perform the services as a part of his official duties. The Controller is not mentioned in the act. But section seven (*Laws of 1865, p. 32*)

provides that when these county bonds were required by the city, they should be " delivered upon the order of the Recorder or City Clerk, to the City Treasurer *or to such other person or persons* as the Common Council shall designate." " And such treasurer or *other designated person,* receiving said bonds shall use and apply the same under the direction of the Common Council to the payment of such local bounties provided for by this act as said Common Council shall direct."

By section eight " such treasurer or other designated person," is required to enter into a bond to the county, to be filed with the County Treasurer in the penalty of double the amount of the bonds delivered, conditioned that he will apply them as above required, and that he will faithfully discharge all the duties imposed upon him by this act.

By the ninth section " such City Treasurer or other person receiving such bonds, is required on the first Monday of October in each year, and at such other times as the County Treasurer shall direct, to make and file with the County Treasurer a report in writing and on oath, showing the name, residence and place of enrollment, (if enrolled ), and time and place of enlistment of each volunteer to whom shall be paid a local bounty and the amount of bounties paid to such volunteer, and the ward for whose benefit such bounty was paid, and the amount of surplus if any, of the bonds, or proceeds thereof, remaining in his hands undisposed of, which surplus shall be delivered to said County Treasurer on demand.

By section ten such bonds are not to be disposed of " by the City Treasurer or other person designated to receive them as aforesaid for less than their par value."

These are all the provisions of the act bearing upon the case, and it is evident: 1st—that under its provisions, without a special designation by the Council, the bonds could not have been delivered to, or the duties in respect

to them imposed upon any officer of the city except the Treasurer.

2d. That the appointment of the plaintiff was made by virtue of the clause in section seven, which allows the Council to "designate some other person or persons" for that purpose.

And, 3d—that any other person or persons who might have been designated by the Council would have possessed all the same powers and required to perform all the same duties as the plaintiff was from the like designation.

Nothing therefore could be further from the intention of the act, than to impose the performance of these services upon the Controller, as a part of his official duties.

Did the resolution of the Council "directing and authorizing the Controller as agent of the city of Detroit," to perform these services, impose them upon the Controller as a part of the duties of his office? We think not, for several reasons.

1st. The only authority to appoint him for this purpose, was derived from the act, which did not impose, nor authorize the Council to impose them upon the Controller as part of the duties of that office.

2d. The resolution appointing him expressly designated him as "the *agent* of the city" for this purpose, and the use of the word "Controller" in such a connection, would naturally be taken as a mere designation of the *person* intended—a mere substitute for the name of the individual. But 3d. The duties required by the act to be performed by this "agent of the city" were wholly foreign to his duties as Controller, as defined by the charter.

Sections seven and eight of chapter four of the charter enumerate and define with great particularity, what shall be the official duties of the Controller, none of which are of the kind or approximate to the nature of the duties to be performed by this agent under the act of 1865. Section eight of chapter four of the charter, it is true, after

enumerating these duties at length has this general provision—"the Controller shall also perform such other duties as are prescribed by this act, or may be prescribed by the Common Council, *subject* to the *provision, of this act.*"

Under this power the Council could not prescribe any duties to the Controller which do not come within the scope, and are in no way subject to the provisions, of the charter, and which are of an entirely different nature from those required by the charter, such as the giving of the bond required and the making of the report here. But the truth is that the Council imposed no duties upon any one by this resolution. The act of the Legislature imposed the duties and left to the Council the power only to designate the person to whom those duties should attach.

But whether the Council had or had not the power to impose any such duties we need not inquire, since they do not appear to have attempted to impose any duties of any kind, either personal or official; but have only, by the special power given them by the act, appointed the man upon whom the act itself imposes the duties, without any reference to his duties as Controller.

The plaintiff therefore is entitled to the same compensation as any other man designated by the Council would have been, and the same as if he never held the office of Controller. The services were performed for the city at the request of the Council, and the law implies a promise to pay what they were reasonably worth.—*Evans v. City of Trenton 4 Zab. 764; Converse v. United States, 21 How. 463.*

The position to which the plaintiff was appointed was one of great responsibility, requiring much skill and labor, and, so far as the record shows, he appears to have performed his duties with fidelity.

It is unreasonable to suppose the Legislature intended that such services and to such an amount should be performed without compensation; and the act of the Legisla-

ture requiring them, being passed long after the charter and upon a subject not within the contemplation of any of its provisions, must be considered as taking this claim out of any provisions of the charter, which might deprive the Council of the power to pay for services performed under, or provided for, by the provisions of the charter, if any exist, which might have such effect.

We are therefore of opinion the charge of the Circuit Judge was correct; and the judgment must be affirmed with costs.

The other Justices concurred.