THE MAYOR AND COUNCIL OF WILMINGTON, AND OTHERS,
Defendants below, Appellants,

*vs.*

JOSIAH O. WOLCOTT, Attorney General of the State of Delaware,
at and by the relation of THE TAXPAYERS' LEAGUE, INCOR-
PORATED,

Complainant below, Appellee.

*Supreme Court, on appeal, Jan. 27, 1921.*

A Statute ratifying the act of the Wilmington city council in paying, in purported pursuance of a city ordinance making the appropriation, the sum of $1,500 to the members of the Board of Assessments as extra compensation for extra services in connection with revision of assessments, *held* not to violate Const. art. 8, § 8, prohibiting municipalities from appropriating money to any private person, on the ground that the appropriation provided for was a gratuity, and a payment to individuals, not for a public, but for a private, purpose; for the fact that the appropriation is to individuals does not prevent the purpose from being a "public purpose," that question being determined by the nature and character of the work done for which the appropriation is made, and an appropriation to pay for the necessary work done in connection with revision of an assessment is for a public purpose.

Neither did the statute violate said constitutional provision on the ground that as it was the duty of the Board to do the extra work, they had no moral claim for extra compensation.

The Legislature may validate any act which it could originally have authorized.

The fact that the ordinance allowing such extra compensation had been declared invalid by the Court of Chancery did not make the Statute ratifying the payment made pursuant to the ordinance invalid as an unwarranted interference with the judiciary.

Though the Chancellor had declared invalid the payment by the city of extra payment for extra services of its officials, a statute changing the law on which the decision was based was not invalid.

APPEAL FROM COURT OF CHANCERY. This is an appeal from a decree of the Court of Chancery in and for New Castle County, dated February 7, 1917, requiring two of the appellants, Weller E. Stover and William P. White, to restore and pay to the Treasurer of the City of Wilmington within sixty days the sum of $1,500 with interest from May 15, 1914.

On May 15, 1914, the Attorney General of the State of Delaware, on relation of the Taxpayers' League, Incorporated, the appellee, filed in the Court of Chancery in and for New Castle County an information against the City of Wilmington and various city officials and the Union National Bank of Wilmington, three of the defendant officials being Weller E. Stover, William P. White, two of the appellants herein, and William E. Johnson, constituting the Board of Assessment, Revision and Appeals of Wilmington. White was President of City Council and Stover was chairman of the Finance Committee of Council. Under the provisions of the city charter the President of Council, the Chairman of the Finance Committee and the Building Inspector composed this board.

The information alleged in substance that on May 14, 1914, the City Council had passed an ordinance granting to the members of the Board of Assessment, Revision and Appeals, $1,500 as extra compensation for extra services rendered during the year 1914; that said ordinance was illegal and void because in violation of the city charter and the Constitution of the State of Delaware. On May 15th a rule to show cause and a restraining order issued as prayed for. It subsequently appeared that the payments under the order referred to have been made to members of the Board of Assessment, Revision and Appeals, and the money withdrawn from the defendant bank prior to the service upon the defendants of the restraining order.

On September 14, 1914, the relator filed an amendment to his original information, setting forth the ordinance of May 14th the same being as follows:

"An ordinance to amend an ordinance entitled an ordinance defining the salaries of the officers of the city.

"Whereas, the Board of Assessment, Revision and Appeals has been called upon to perform unusual and extra duties in connection with the revision of the assessment for the year 1914; and

"Whereas, in the opinion of Council its was not intended when the salaries of the said board were fixed that its members should be required to do the great amount of work required in revising the assessment for the year 1914; and

"Whereas, under the third paragraph of section 31 of the charter,

Council is given power and authority to fix the salaries of all officers an employees paid by it; and

"Whereas, in the opinion of Council it would be unfair to permit the said board to do the great amount of work required of them as aforesaid without extra compensation:

"Now, therefore,

"Be it ordained by Council as follows:

"Section 1. That section 1 of the ordinance entitled 'An ordinance defining the salaries of the officers of the city,' published as altered and amended on page 608 of the Charter, Laws and Ordinances of the City of Wilmington of 1910, be and the same is hereby amended by inserting after the figures '(150.00)' in line 17 of said section the words and figures following, to wit:

"Provided, however, that there shall be paid in addition to the said sum of one hundred and fifty dollars to each of the members of the Board of Assessment, Revision and Appeals, a further sum of fifteen hundred dollars for the year 1914 only, for extra services rendered, the said fifteen hundred dollars to be divided among the several members of said board as they may determine, and the said extra compensation shall be due and payable upon the approval of this ordinance.'

"Section 2. That all ordinances or parts of ordinances inconsistent herewith be and the same are hereby repealed."

White and Stover did not vote for or against the ordinance.

The defendants demurred to the amended information, and on February 9, 1915, the Chancellor overruled the demurrer and held that the ordinance of May 14th was in violation of the city charter. (10 *Del. Ch.* 384, 93 *Atl.* 364.)

The General Assembly, by act approved March 15, 1915 (28 *Del. Laws, c.* 122), passed the following act in an effort to ratify and confirm the act of the City Council in paying to the members of the Board of Assessment, Revision and Appeals the $1,500.

"An act to authorize Council of 'Mayor and Council of Wilmington' to compensate the present Board of Assessment, Revision, and Appeals for extra work done by them.

"Whereas, during the year 1914 an unusual amount of work has been done by the Board of Assessment, Revision, and Appeals for the City of Wilmington; and

"Whereas, the city council did pay the members thereof for such extra services the sum of fifteen hundred dollars; and

"Whereas, a question has been raised as to whether under the present

laws such extra compensation could be allowed to said Board of Assessment, Revision, and Appeals; and

"Whereas, since the payment of the said sum additional work has been done by said Board of Assessment, Revision and Appeals for which city council may desire to compensate the said board: Now, therefore,

"Be it enacted by the Senate and House of Representatives of the State of Delaware in General Assembly met, two-thirds of the members elected to each house concurring therein:

"Section 1.  The act of said city council in paying the sum of fifteen hundred dollars to the members of the Board of Assessment, Revision, and Appeals, be and the same is hereby ratified and confirmed.

"Section 2.  That city council be and it is hereby authorized and empowered by ordinance to allow such additional compensation to the Board of Assessment, Revision, and Appeals for extra work done or to be done by them as in the judgment of council may seem proper.

"Section 3.  That all acts or parts of acts inconsistent herewith are hereby repealed."

On May 4, 1915, an amended information was filed setting forth the above act, and alleging it to be unconstitutional and void.  The amended information prayed for a preliminary mandatory injunction to compel the defendants to restore the $1,500 to the account of the city.  On May 6, 1915, the rule issued.

On June 3, 1915, the answers of the defendant city and its officials were filed, admitting the appointment of the various officials and the passing of the ordinance of May 14, 1914, and the payment of the $1,500 to the members of the Board of Assessment, Revision and Appeals.  The defendants denied all allegations as to the illegality of their acts and alleged that the acts of the defendants were done in good faith; that the work of the members of the board was done to remedy a serious situation with respect to the assessment of real estate in the City of Wilmington, pursuant to the act of the General Assembly of 1913 (*Act Gen. Assem. April* 7, 1913 [27 *Del. Laws, c.* 205]); that it was the firm belief of the Mayor and members of The Council that the board's compensation could be changed by ordinance, and it was agreed by the Mayor and all the members of Council except one that, if the members of the board would undertake the work, the other members of Council and the Mayor would take the necessary action to compensate them therefor; that the Mayor and other

members of Council were familiar with the work done by the board, and that they had done work which they had authority to employ others to do, and the city had been saved a much larger sum than was paid as extra compensation; and that at the beginning of the work it was impossible to determine satisfactorily the amount of extra work imposed upon the board.

On June 7, 1915, an affidavit on behalf of the relator was filed. On June 14 and 15, 1915, defendants filed eight affidavits, executed by various members of Council and city officials. These affidavits set forth in detail the facts alleged in the answers filed, and set forth the extraordinary work performed by the members of the board. On July 16, 1916, the Chancellor filed his opinion which holds, in effect, that there could be no moral claim by the members of the Board of Assessment, Revision and Appeals for extra compensation, because it was their duty to do the extra work; that the extra payment was a gratuity and a gift and therefore not an appropriation of public·funds for a public purpose, and that the Act of the General Assembly ratifying and confirming the ordinance, was void.

On March 27, 1916, a motion for a decree, notwithstanding answer was filed and on February 7, 1917, the Chancellor filed an opinion and entered a decree requiring Weller E. Stover and William P. White, the two surviving members of the Board of Assessment, Revision and Appeals, two of the city officials, to restore and pay to the Treasurer of the City of Wilmington the sum of fifteen hundred dollars, with interest from May 5, 1914. *

The assignments of error are:

"1. That the Court of Chancery erred in decreeing that the said William P. White and Weller E. Stover, two of the defendants above named, should restore and pay to the Treasurer of The Mayor and Council of Wilmington the sum of fifteen hundred dollars ($1,500.00), with interest, and that such sum be accepted by The Mayor and Council of Wilmington, one of the defendants above named.

---

*NOTE. The questions raised at the hearing of the motion for decree notwithstanding answer were the same as those disposed of at the hearing on the rule for a preliminary injunction (11 Del. Ch. 15, 95 Atl. 303). The opinion referred to as having been filed February 7, 1917, was after a hearing as to the form of the decree, and is not reported.

"2.  That the Court of Chancery erred in not dismissing the bill of complaint filed in the above entitled cause.

"3.  That the Court of Chancery erred in holding unconstitutional certain act of the General Assembly·of the State of Delaware, of March 15, 1915, being chapter 122, volume 28, Laws of Delaware."

Argued before PENNEWILL, C. J., and BOYCE, CONRAD and RICE, J. J.

*Daniel O. Hastings*, for the appellants.

*Robert Adair*, for the appellee.

PENNEWILL, C. J., after making the foregoing statement, delivering the opinion of the majority of the Court:

Counsel for the appellants admits that the ordinance of May 14, 1914, was at the time of its passage invalid, the same being contrary to the provision of the charter of the City of Wilmington, but contends that the ordinance was validated by the Act of Legislature approved March 15, 1915. The Court below held both the ordinance and Act of Legislature to be in violation of article 8, § 8, of the Constitution of the State of Delaware, for the reason that the appropriation provided for was a gratuity and a payment to individuals not for a public but for a private purpose; that there could be no moral claim by the members of the board for extra compensation because it was their duty to do the extra work.

Article 8, § 8, reads as follows:

"No county, city, town or other municipality shall lend its credit or appropriate money to, or assume the debt of, or become a shareholder or joint owner in or with any private corporation or any person or company whatever."

This Court cannot agree with the Court below in holding that the ordinance and act of 1915, were in violation of section 8, article 8, of the Constitution, for we are of the opinion that the appropriation was for a public and not a private purpose. The appropriation was to individuals, but the work the board did was for a public purpose and strictly public in its character. The fact that the appropriation is to individuals does not prevent the purpose from being a public one. The nature and character of the work done for which the appropriation is made determines whether it is for a public or private purpose. The making of an

assessment for a city, when properly and lawfully authorized, is of a public and not a private nature, and an appropriation to pay for the necessary work done in connection with the assessment is certainly for a public purpose. *Woodall v. Darst,* 71 *W. Va.* 350, 77 *S. E.* 264, 80 *S. E.* 367, 44 *L. R. A.* (*N. S.*) 83, *Ann. Cas.* 1914*B,* 1278; *State v. Levy Court,* 1 *Pennewill,* 597, 43 *Atl.* 522.

This Court cannot agree with the Court below in holding that there could be no moral claim by the members of the board for extra compensation because it was their duty to do the extra work. 1 *Cooley on Taxation,* 208, 209. We are of the opinion that the statute providing for the new assessment did not require the new assessment to be made, and, if made, that the members of the board were not required to do the work themselves, as they had authority under the Act to employ experts or others to do the work, and when The Mayor and Council agreed that the members of the board should do the work and be paid reasonable compensation therefor, there was, under the circumstances of the case, a moral obligation resting upon the city to pay the members of the board for the extra work they did in making the assessment.

The law is settled that a public official has no legal claim for extra compensation for unusual or increased work within the scope of his official duties, and unquestionably the members of the board could not compel the city to compensate them for making the new assessment. But the right of an official to recover compensation for extra work is not the question before us because the members of the board have been paid by the city. The question before us is the right of the City Council or the Legislature to grant it when the officials fairly and honestly earned and are equitably entitled to it.

The Mayor and City Council determined that a new assessment for the city should be made, and it could better be done by members of the board than by experts or others who might be employed. The board had authority to employ others to do the work. The Mayor and members of City Council, believing that they had legal authority to do so, agreed with the members of the board to compensate them for the extra services. Stover and White performed the work for which they received extra com-

pensation, in their capacity as individuals and not as members of the Board of Assessment, Revision and Appeals, and at the request of the city authorities.

It is not denied that the members of the board performed the work in an efficient and satisfactory manner; that the work was of a different kind, difficult and far greater than any the board had previously performed; that the work done by White and Stover was arduous, exacting and long-continued, to the great detriment of their private business; that the assessment was of great and continued benefit to the city and worth all the extra compensation paid them therefor. *Mount v. State*, 90 *Ind.* 29, 46 *Am. Rep.* 192; *Evans v. Trenton*, 24 *N. J. Law,* 764; *Niles v. Muzzy*, 33 *Mich.* 61, 20 *Am. Rep.* 670; *Matter of Borup*, 182 *N. Y.* 222, 74 *N. E.* 838, 108 *Am. St. Rep.* 796; *Rutgers College v. Morgan*, 70 *N. J. Law*, 460, 57 *Atl.* 250; *United States v. Realty Co.*, 163 *U. S.* 427, 16 *Sup. Ct.* 1120, 41 *L. Ed.* 215; *Friend v. Gilbert*, 108 *Mass.* 408; *Detroit v. Redfield*, 19 *Mich.* 376; *McBride v. Grand Rapids*, 47 *Mich.* 236, 10 *N. W.* 353.

One disturbing fact with respect to the moral or equitable claim of the members of the board for compensation for the extra work is that Stover and White were members of the city council at the time the agreement was made. While this fact might ordinarily raise suspicion of such a nature as would prevent payment to the members of the board for the extra work, yet in the present case we think the claim is not removed from the class considered moral or equitable, for the reason that they were by the authorities requested to do the work and were promised reasonable compensation therefor, and it clearly appears from the record that there was no fraudulent or collusive conduct on the part of the members of the board or anyone acting for the city.

This case has been twice argued before the Court. After the first argument we reached the conclusion above expressed respecting the other questions raised, but were not convinced that the legislative act of 1915 was constitutional, and stated that the judgment of the Court below would be affirmed. Thereupon a motion for reargument of the case was made by the appellants and granted by the Court.

The reargument was heard at the last June term, upon the

point respecting which the Court was in doubt, viz.: Whether the legislative act of 1915 which sought to validate and affirm the payment made by the Council was unconstitutional and void because it was an unwarranted interference by one branch of the government, the Legislature, with another branch thereof, the judiciary. In view of the authorities cited at the last argument, and particularly the case of *Steele County v. Erskine*, hereinafter mentioned, the Court is of the opinion that the Act passed in 1915 was not unconstitutional, but was a legal exercise of legislative power, and validated the payment in question. It is not questioned that the Legislature could make the act retroactive, nor that it might have authorized the payment before it was made. And it is well settled that the Legislature may validate an act which it could originally have authorized. *Cooley's Const. Limitation*, (*7th Ed.*) 541.

Mr. Sutherland, in his work on *Statutory Construction*, (*2d Ed.*) *vol.* 2, at 1237 and 1238, says:

"It is no objection to a curative Act that it validates what has previously been declared invalid in a judicial proceeding. The judgment may furnish the occasion for this Act. Of course the Legislature cannot annul or set aside the judgment of a court, but it may remove a defect on which judgment proceeded."

See also *Cooley on Const. Limitation*, 541, 542, 543, and 544.

In the present case no final judgment had been entered by the Court when the healing act was passed. It was only a proceeding before the Court, and at a preliminary stage, when a decision was made on demurrer to the bill of complaint. The curative act did not reverse the decision of the Chancellor, but on the contrary recognized the soundness of his decision on the law as it then existed. The purpose of the Act was to make valid an Act of the City Council which was invalid at the time of the Chancellor's decision. Clearly such an Act would have been valid if passed before the decision, and we cannot see why it is not equally valid if passed after the decision. It could not reverse the decision and did not pretend to, but it could change the law upon which the decision was based. The law upon the subject is very clearly stated by the Court, composed of Caldwell, Sanborn,

and Thayer, Circuit Judges, in the case of *Steele County v. Erskine,* 98 *Fed.* 215, 39 *C. C. A.* 173, as follows:

"From this it follows that the Legislature could retroactively legalize the contract, unless such action would be an infringement upon the judicial power. The act of a municipality, done without authority previously conferred, may be confirmed and legalized by subsequent legislative enactment when legislation of that character is not prohibited by the Constitution, and when that which was done would have been legal had it been done under legislative sanction previously given. [Citations.] The objection that the act in question was judicial legislation wholly misconceives the nature of the act. The Legislature did not declare the contract valid which the court had adjudged invalid, but made it valid by imparting to it the legislative sanction which the Court had declared was the only element wanting to its validity. The Act did not construe, but completed, the imperfect contract which the county had made. Seizing upon the duty that in good conscience rested upon the county, to pay for the service which it had received, the Legislature, by virtue of its authority over the municipality as a public agency of the State, ratified its act, and thereby changed its moral duty into a legal obligation. Its Act was formative, not judicial. The want of power in a municipal corporation to enter into a contract is usually disclosed for the first time by an adverse decision in the courts, and, if it should be held that such a decision precludes the Legislature from curing the defect, retroactive legislation would be defeated in those cases in which it has heretofore been most frequently used, and in which it had its highest justification. Such is not the law."

In reply to the contention that the corporation has a vested right under the judgment, the Court said:

"The defendant is a public *quasi* corporation, created solely for governmental purposes. It holds all its property, and rights, not as a private proprietor, but for the performance of those public duties, with which it is charged by law. Being a mere instrumentality of the State for the convenient administration of government, it is at all times, both as to its powers and its rights, subject to legislative control. * * * A purely public corporation, like a county, cannot acquire any vested interest which will preclude the Legislature from directing the application of all its property and rights. * * *

"The obligations of private parties must be determined by the law in force at the time the transactions out of which they accrue. But, as we have already seen, this principle does not apply in case of public corporations, so as to preclude the passage of curative acts. It being conceded that the defendant had no vested right, as against the Legislature, in the defense of *ultra vires,* how can a judgment which simply declares the existence of that defense create a better right than the defense itself."

The judgment of the Court below will be reversed.