In re The **STATE EMPLOYEES' PENSION PLAN** *of the State of Delaware.*

**No. 300, 1975.**

Supreme Court of Delaware.

Submitted April 12, 1976.

Decided Aug. 23; 1976.

A. Gary Wilson, Deputy Atty. Gen., for State Board of Pension Trustees.

James F. Burnett, of Potter, Anderson & Corroon, Wilmington, amicus curiae.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

This certification of questions of law [Del.Const. Art. 4, § 11(9)], arose from an action filed by the State Board of Pension Trustees (hereinafter "Board") in the Court of Chancery, pursuant to that Court's inherent jurisdiction over trusts and trustees. The action seeks, as a protective order, instructions that certain Statutes enacted by the General Assembly are valid, and that the Board and its members may comply with the terms thereof without violating their fiduciary duties to the State Employees' Pension Plan and the State Employees' Retirement Fund. See 29 Del. C. Ch. 55; §§ 5541, 5542, and 8308.[1]

---

1. 29 Del.C. § 5541 provides:

"§ 5541. Establishment of Fund.

"There shall be established a State Employees' Retirement Fund, hereinafter referred to as 'Fund,' to which state appropriations and other employer contributions shall be deposited monthly and to which employee contributions shall be deposited upon deduction from the employee's paycheck and to which earnings on investments, any other contributions, gifts, donations, grants, refunds and reimbursements shall be deposited upon receipt and from which benefits shall be paid and fees and expenses authorized by the Board shall be paid."

29 Del.C. § 5542 provides:

"§ 5542. Board of Pension Trustees.

"The Board of Pension Trustees established by § 8308 of this title, shall be responsible for the general administration of this chapter

## I.

The Statutes in question are of four types:

(1) The first type requires the Board to accept the applications of and award service, disability, or survivor's pensions to individuals who do not meet the existing eligibility requirements of the State Employees' Pension Plan, as set forth in 29 Del.C. Ch. 55.[2] The Statutes in this category are:

60 Del.Laws, Chs. 112, 178, 222, and 256.[3]

in accordance with the provisions of Chapter 83 of this title."

29 Del.C. § 8308 specifies, in detail, the powers, duties, and functions of the Board, including 'control and management of the state pension funds"; the power and duty "to determine eligibility for disability pension benefits", "to hear appeals from the decision or action of the Division of the Treasury regarding eligibility for nondisability pension benefits", and "to maintain and invest the pension funds under its control and management".

2. 29 Del.C. § 5522(a) provides:
"§ 5522. Eligibility for service pension.
"(a) An employee shall become eligible to receive a service pension, beginning with the month after he has terminated employment, if:
"(1) He has 5 years of credited service, exclusive of service credited under § 5501 (2)d. or e. of this title, and has attained age 65, or
"(2) He has 15 years of credited service, exclusive of service credited under § 5501 (2)d. or e. of this title, and has attained age 60 or
"(3) He has 30 years of credited service."
29 Del.C. § 5524(a) provides:
"§ 5524. Eligibility for disability pension.
"(a) An employee who has 15 years of credited service, exclusive of service credited under § 5501(2)d. or e. of this title, and who becomes disabled shall become eligible to receive a disability pension beginning with the fourth month following the inception of his disability. He shall cease to be eligible at the end of the month in which he recovers from disability if such recovery occurs before his attainment of age 60."
29 Del.C. § 5528(a) and (b) provide:
"§ 5528. Survivor's pension.
"(a) Upon the death of an employee who has 15 years of credited service, exclusive of service credited under section 5501(2)d or e of this title, a monthly survivor's pension shall be payable to his eligible survivor or survors in an amount equal to one half of the service pension for which the employee would have been eligible if he had been 60 years of age.
"(b) Upon the death of an individual receiving a service or disability pension at the time of his death (other than a pension payable solely under section 5522(a)(1) of this title), a monthly survivor's pension equal to one half of such service or disability pension shall be payable to his eligible survivor or survivors."

3. 60 Del.L. Ch. 112, approved June 23, 1975, provides:
WHEREAS, Richard C. Beckett was employed by the old Delaware State Board of Health from January 1, 1924, to December 16, 1948, as a Sanitary Engineer; and
WHEREAS, Richard C. Beckett died on December 16, 1948, while enroute to a meeting of the State Board of Health; and
WHEREAS, Mr. William L. Phillips of the Office of Pensions and Investments has informed Mrs. Beckett that she is not entitled to any survivor's benefits since the surviving spouse benefits provision of the State Employees Pension Plan did not go into effect until 1955, to wit: Volume 50, Chapter 498, Laws of Delaware, which did not have any retroactive provisions; and
WHEREAS, Richard C. Beckett served with fidelity and distinction for almost 25 years until his death in December of 1948; and
WHEREAS, his widow, Mrs. Richard C. Beckett, should receive widow's pension benefits for the long and dedicated services rendered to the State of Delaware by her deceased husband, Richard C. Beckett.
NOW, THEREFORE:
BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:
Section 1. The Board of Trustees is hereby directed to accept the application of Mrs. Richard C. Beckett for a survivor's pension from her late husband, Mr. Richard C. Beckett, in accordance with the provisions of Chapter 55, Title 29, Delaware Code, and further directed to determine the said Mrs. Richard C. Beckett to be eligible for a survivor's pension under the provisions of § 5528, Title 29, Delaware Code.
60 Del.L. Ch. 178, approved July 2, 1975, provides:
WHEREAS, Olvin Roosevelt Sampson served the people of the State of Delaware in an exemplary fashion as a custodian for the Wilmington Public Schools; and

(2) The second type directs the Board to award pension benefits in excess of the amount to which the named pensioners are otherwise entitled. The Statutes in this category are 60 Del.Laws, Chs. 186 and 188.[4]

WHEREAS, Olvin Roosevelt Sampson served for twelve years five months and twenty-six days as an employee of the Wilmington Public Schools; and

WHEREAS, Olvin Roosevelt Sampson died June 29, 1969, leaving to survive him, his widow, Catherine Sampson.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

Section 1 Amend Chapter 55, Title 29, Delaware Code, for the sole purpose of permitting the State of Delaware ,to give the widow of Olvin Roosevelt Sampson, the said Catherine Sampson, a pension as provided in Chapter 55, Title 29, Delaware Code. The Board of Pension Trustees is hereby directed to accept the application of the widow of Olvin Roosevelt Sampson, the said Catherine Sampson, for service pension benefits and ,to determine that the said Catherine Sampson, is eligible for such benefits, all statutory provisions and regulations to the contrary notwithstanding. The pension benefits of the widow of Olvin Roosevelt Sampson, the said Catherine Sampson, shall be based upon the 12 years, 5 months and 26 days of service of her late husband Olvin Roosevelt Sampson.

60 Del.L. Ch. 222, approved July 9, 1975, provides:

WHEREAS, Walter R. Wimbrow was a dedicated State employee for almost twelve years; and

WHEREAS, Walter R. Wimbrow, who died in March 1975, was the recipient of a State pension; and

WHEREAS, Mrs. Walter R. Wimbrow has been notified by the office of pension that under the provisions of § 5528(b) of Chapter 55, Title 29, Delaware Code she is not entitled to a survivor's pension because her late husband did not have sufficient service time; and

WHEREAS, Mrs. Walter Wimbrow should receive a survivor's pension for the dedicated services rendered to the State of Delaware by her deceased husband, Walter R. Wimbrow.

NOW THEREFORE:

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

Section 1. The Board of Trustees is hereby directed and authorized to accept the application of Mrs. Walter R. Wimbrow for a survivor's pension from her late husband Walter R. Wimbrow and the Board is further directed to determine that Mrs. Walter R. Wimbrow is eligible for a survivor's pension all provisions of Chapter 55, Title 29, Delaware Code, to the contrary notwithstanding.

60 Del.L. Ch. 256, approved July 11, 1975, provides:

WHEREAS, Joseph A. Lenhoff, of 1314 West Eighth Street, Wilmington, has been employed by the Division of Revenue of the Department of Finance and predecessor State agencies for a period of 14 years, 10 months and 15 days; and

WHEREAS, to be eligible for a disability pension Joseph A. Lenhoff should have been employed for 15 years; and

WHEREAS, all that Joseph A. Lenhoff needs to qualify for a disability pension is one month and 15 days; and

WHEREAS, since October 1964, Joseph A. Lenhoff has experienced a serious heart condition requiring his absence from work; and

WHEREAS, as a State employee Joseph A. Lenhoff served diligently and faithfully in his employment.

NOW, THEREFORE:

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

Section 1. The Board of Pension Trustees is hereby directed to determine that Joseph A. Lenhoff has met the eligibility requirements necessary ,to qualify him for a disability pension under the State Employees' Pension Plan, and the Board of Pension Trustees is hereby directed to accept the application of Joseph A. Lenhoff for a disability pension.

4. 60 Del.L. Ch. 186, approved July 8, 1975, provides:

WHEREAS, by act of the 127th General Assembly of the State of Delaware known as Chapter 509, Volume 49, Laws of Delaware, Katherine Episcopo, widow of Rocco A. Episcopo, was granted a survivor's pension; and

WHEREAS, the said Rocco A. Episcopo was a former State employee who had worked for a period exceeding ten years; and

WHEREAS, the pension paid to Katherine Episcopo, widow of Rocco A. Episcopo, amounts to $58.59 per month although the said pension should be larger considering Rocco A. Episcopo's long and dedicated service to the State of Delaware.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

Section 1. The Board of Pension Trustees is hereby directed to recompute the survivor's pension paid to Katherine Episcopo, widow of Rocco A. Episcopo, a former State em-

(3) The third type directs the Board to include, for computational purposes, time which a pensioner spent as an employee of New Castle County, despite the fact that the State Employees' Pension Plan does not allow for the inclusion of such service for computational purposes. The Statute in this category is 60 Del.Laws, Ch. 239.[5]

(4) The fourth type directs that pension benefits be paid from the proceeds of the State Employees' Pension Fund to a class of former State legislators who were not entitled to such benefits at the time they left public office. The Statute in this category is 60 Del.Laws, Ch. 214.[6]

None of the aforesaid Statutes includes an implementing appropriation; each pension benefit created thereby is to be paid out of the State Employees' Pension Fund.

---

ployee, and the Board is further directed to determine that Katherine Episcopo shall receive a minimum of not less than one hundred and fifty dollars per month, commencing on the date on which the survivor's pension was started.

60 Del.L. Ch. 188, approved July 8, 1975, provides:

WHEREAS, Howard M. Teal was employed by the State of Delaware and New Castle County for approximately 18 years; and

WHEREAS, Howard M. Teal was granted a service pension under Chapter 524, Volume 59, Laws of Delaware; and

WHEREAS, the Board of Pension Trustees authorized a service pension of $59.60 per month; and

WHEREAS, the nature of Mr. Teal's work with the Delaware Highway Department and with New Castle County during the long period of 18 years was such as to warrant better consideration.

NOW THEREFORE:
BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

Section 1. The Board of Pension Trustees is hereby directed to re-evaluate pension benefits for Howard M. Teal and the Board is further directed to determine that Howard M. Teal shall receive a minimum of not less than one hundred and fifty dollars per month, commencing on the date on which he was granted his original pension of $59.60.

5. 60 Del.L. Ch. 239, approved July 9, 1975, provides:

WHEREAS, Charles A. Dougherty was employed by the Levy Court of New Castle County from January 1, 1955, to March, 1958, serving three years and three months; and

WHEREAS, Charles A. Dougherty was subsequently employed by the Department of Highways and Transportation from April 1, 1958, through July 1, 1975, serving for over seventeen years; and

WHEREAS, for his long years and dedicated service, the county employment of Mr. Dougherty should be used not only to determine eligibility for a pension, but should be counted in computing the amount of pension he shall receive.

NOW THEREFORE,
BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

Section 1. The Board of Pension Trustees is hereby directed, in granting a service pension to Charles A. Dougherty, to use the three years, three months, County time in computing the pension payments to be received by him, all statutory provisions and regulations to the contrary notwithstanding.

6. 60 Del.L. Ch. 214, approved July 9, 1975, provides:

WHEREAS, members of the Delaware General Assembly have been eligible for a State pension as full-time employees of the State of Delaware since 1970; and

WHEREAS, former members of the Delaware General Assembly who served before 1970 are not eligible for a State pension; and

WHEREAS, a cutoff date under the circumstances is highly unfair to former members of the Delaware General Assembly; and

WHEREAS, the State Employees' Pension Plan should now be amended to end this discrimination.

NOW THEREFORE:
BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE:

Section 1. Amend. § 5527, Chapter 25, Title 29, Delaware Code, by adding after § 5527(d) the following subparagraph:

"(1) Notwithstanding any other provision of this Chapter, members and former members of the General Assembly who served for a minimum of five (5) years which years were served before June, 1970 or were served partly before June, 1970 and partly after June, 1970, shall also be eligible for pensions under this Chapter."

## II.

Upon the basis of the foregoing, the following questions of law were certified and accepted:

*Question No. 1:* Does 60 Del.Laws, Ch. 214, which awards pension benefits under the State Employees' Pension Plan to individuals who did not qualify for such benefits at the time they terminated State employment, authorize the payment of public funds for a non-public purpose in violation of Art. I, § 7, and Art. VIII, § 4, of the Constitution of the State of Delaware and the due process clause of the 14th Amendment to the United States Constitution?

*Question No. 2:* Do 60 Del.Laws, Ch. 112, 178, 186, 188, 222, 239 and 256 violate the separation of powers doctrine in that, by direction of the General Assembly, they require petitioner, an administrative agency of the State of Delaware, to award pension benefits in situations not authorized by the existing provisions of the statute which petitioner is required to enforce, i. e. 29 Del.C., Ch. 55?

*Question No. 3:* Do the statutes in issue violate the equal protection clause of the 14th Amendment of the United States Constitution by:

(a) Directing petitioner to award pension benefits to certain named individuals who do not meet the existing eligibility requirements of the State Employees' Pension Plan, while failing to award similar benefits to others with identical employment records?

(b) Directing petitioner to award pensions to certain named individuals in amounts exceeding that to which they are entitled under the existing provisions of the State Employees' Pension Plan, while failing to award similar levels of benefits to others with identical employment records?

(c) Directing petitioner to compute a named individual's pension benefit based in part on a period of employment which does not qualify as credited service under the existing provisions of the State Employees' Pension Plan, while failing to make similar provisions for others with identical employment records?

*Question No. 4:* Do the statutes in issue unlawfully impair the contractual rights of former and present State employees (participants in the Plan) in violation of Article I, Section 10 of the United States Constitution?

*Question No. 5:* Do petitioner's fiduciary obligations to the State Employees' Pension Plan and the State Employees' Retirement Fund preclude petitioner's approving the payment of pension benefits from said Fund in amounts not authorized by the existing provisions of the Plan or to individuals who do not meet the existing eligibility requirements of the Plan?

James F. Burnett, Esquire, was appointed *amicus curiae* by the Court of Chancery to represent the interests of all those persons who might be adversely affected by the Statutes here in question.

We find the Answer to Question No. 4 determinative.

## III.

The Fourth Question certified is whether the Statutes unlawfully impair or infringe the contractual rights of former and present State employees, participants in the Plan and compulsory contributors to the Fund, in violation of Article I, Section 10, of the Federal Constitution. We conclude that the answer is affirmative at least as to all those with statutory vested rights to

service pensions[7] or otherwise presently eligible for pensions under the Plan.

Article I, Section 10, of the Federal Constitution provides: "No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *."

■ Although the "prohibition of the contract clause is no longer absolute and must yield to the right of the State to legislate to protect vital interests of the people," only "minor impairment or infringement of contractual rights is permissible." *Globe Liquor Co. v. Four Roses Distillers Co.,* Del.Supr., 281 A.2d 19, 21 (1971).

The threshold question is whether there is a contractual relationship between the State, as employer, and those present and former State employees who have participated in the Plan and contributed to the Fund.[8] That question was resolved by this Court, at least as to those with statutory vested rights in service pensions or otherwise presently eligible for pensions under the Plan, in *Dorsey v. State ex rel. Mulrine,* Del.Supr., 283 A.2d 834 (1971). There it was held that, under a contributory plan, "pensions are a part of the compensation of an employee to which ordinarily he is as much entitled as he is to the wages he is paid for the work actually performed by him." 283 A.2d at 836. *Accord, City of Wilmington v. Miller,* Del. Supr., 293 A.2d 574 (1972).

At a later phase of the *Dorsey* case, this Court discussed in more detail the contractual nature of the relationship between a public employer and a public employee under a compulsory contribution pension plan: (301 A.2d at 518).

"Contrary to The City's position, we are of the opinion that the Police Pension Law does indeed create a form of quasi-contract which binds The City to certain performances. The implied, or quasi-contract, is one where the law will infer the existence of a contractual relationship without regard to the actual intention of the parties where circumstances are such that justice warrants a recovery as though there had been a promise or contract.

"Originally a pension was a gratuity usually offered to a retiring officer or executive of a company to show the company's appreciation for past services rendered. Those first pension systems were non-contributory and, although a person might have expected to receive a pension, the recipient usually did not accept employment or continue therein in reliance upon the expectation of a pension. As time and the nature of employment relationships passed, employers—even governments—found it necessary as a matter of competition to offer a pension plan benefit as an inducement for the hire or retention of employees. Indeed, in today's economy, the terms and conditions of an employer's pension plan play an important role in inducing a man to enter or continue in the service of that employer. In other words, it is a part of the consideration for the contract of hire."

The State points out that *Dorsey* involved a retired police officer's pension rights which had vested by reason of his completion of specific service eligibility requirements. Similarly, it is pointed out that the *Miller* case involved a police offi-

---

7. 29 Del.C. § 5523(a) provides:
"An employee who has 20 years of credited service, including 15 years credited under § 5501(2)a., b. and c. of this title, shall have a vested right to a service pension."

8. 29 Del.C. § 5543(a) provides:
"§ 5543. Employee contributions.
"(a) An employee shall contribute to the Fund 5% of his monthly compensation in

excess of $500, except that if he receives an annual compensation paid to him in fewer than 12 months he shall contribute 5% of his monthly compensation in excess of the dollar amount determined by multiplying the ratio of 12 to the number of months he is paid x$500. provided that in no case shall contributions for any calendar year exceed $900 or a contribution be required after an employee has accrued a pension of $1,000."

cer who had satisfied the statutory requirements for a disability pension. With those observations, the State seems to have no quarrel with the following conclusion of *Dorsey:* (283 A.2d at 836)

> "There is a division of authority among the States as to whether or not a contributory pension system creates a vested interest in an employee who has satisfied the requirements for retirement. . . . We have carefully considered the division in the authorities and are of the opinion . . . that pension rights under a municipality pension law become vested at least when the requirements for the grant of a pension has been fulfilled, . . ."

■ In accord with *Dorsey,* we hold that vested contractual rights exist under the State Pension Law and in the State Pension Fund, at least as to those employees and former employees who have statutory vested rights in service pensions or who have otherwise fulfilled eligibility requirements for pension. It is unnecessary for us to reach the question of whether other employees have vested contract rights under the Plan; for if each Statute in question is unconstitutional as to employees presently eligible for pension benefits, it is indivisible as to other employees and must be held wholly invalid.

■ The question then becomes the extent to which the General Assembly may change contractual rights of participants in the Plan. The better rule, in our view, is that a public employee having a vested contractual right in a Pension Plan is entitled to protection against unreasonable modification of the Plan. See 3 *Mc-*

*Quillen, Municipal Corporations,* § 12.144 (3rd Ed. 1973) ; 60 *Am.Jur.2d,* "Pension & Retirement Funds" § 49; e. g., *Police Pension and Relief Board of Denver v. Bills,* 148 Colo. 383, 366 P.2d 581 (1961). We adopt that rule of reason.

■ The issue then is whether the Statutes in question purport to make unreasonable modifications in the Pension Plan. We are of the opinion that the answer to that question is affirmative, for the following reasons:

■ First, as indicated in *Dorsey,* the fundamental intent and purpose of a public Pension Plan is to encourage individuals to enter and remain in public service by arranging for a pension which, by fulfillment of specified eligibility requirements, may become the property of the individual as a matter of right upon termination of public service. See also *Fraternal Order of Firemen v. Shaw,* Del.Supr., 41 Del.Ch. 399, 196 A.2d 734 (1963).

The portion of 60 Del.L. Ch. 214 dealing with former members of the General Assembly, and the other Statutes here in question, bear no reasonable relationship to that fundamental intent and purpose.[9] They are more in the nature of gratuities awarded by an appreciative General Assembly out of compassion or gratitude. "A pension is a gratuity when it is granted for services previously rendered and which at the time they were rendered gave rise to no legal obligation." *Lamb v. Board of County Peace Officers Retirement Comm.,* 29 Cal.App.2d 348, 84 P.2d 183 (1938); *Mattson v. Flynn,* 216 Minn. 354, 13 N.W. 2d 11 (1944). Compare, however, the established Delaware concept of public con-

---

9. Indeed, the precedent of adding, as eligibles, favored non-contributing individuals, or an entire class of former non-contributing State employees, may be said to be counter-productive to the fundamental purpose and intent of the Plan, because it tends to discourage public employees, and those contemplating public employment, as to the stability and reliability of the Plan and the Trust Fund to which they will be obliged to make substantial contributions from salary over a period of many years. They will know that if this action is permissible, future General Assemblies are equally free to add favored, non-contributing individuals and classes of former State employees as eligibles under the Plan and to the Trust Fund, without limitation.

tributory pension plans: "pensions are a part of the compensation of an employee to which ordinarily he is as much entitled as he is to the wages he is paid for the work actually performed by him." *Dorsey v. State ex rel. Mulrine,* Del.Supr., 283 A.2d 834, 836 (1971).

Implementation of the basic purpose and intent of the Pension Plan requires careful preservation of the Trust Fund for its intended beneficiaries—those individuals who have entered and remained in public service in reliance upon it and who have been obliged to contribute to it. The purpose and intent of the Plan and the Trust Fund is not served by a statute which provides for the payment of gratuitous pensions from the corpus of the Trust Fund created for the support of the contributory plan. Such action, in our view, can only weaken the confidence and dedication of employees who are required to contribute a portion of their salaries, year after year, to the Fund.

■ Secondly, we find the Statutes in question (except Ch. 214) to be unreasonable modifications of the Pension Plan because they constitute an effort by the General Assembly to administer eligibility for pension on an individual case-by-case basis, with no standards or guidelines except, perhaps, gratitude or compassion. "Band-aid" eligibility exceptions are created and the duties and functions of the Board of Trustees, an arm of the Executive Branch of State Government, are usurped in violation of the Separation of Powers Doctrine. This is just as unreasonable as would be a like case-by-case effort by the General Assembly to administer the Workmen's Com-

pensation Act or the Unemployment Compensation Act, as to which contributory Trust Funds have also been created.

■ That is not to say, however, that the General Assembly lacks the inherent power to grant a separate and individual pension award, with separate implementing appropriation, to a deserving person, out of gratitude or compassion or in the fulfillment of a moral obligation. Such power may well exist in an appropriate case. See, e. g. *Mayor of Wilmington v. Wolcott,* Del.Supr., 12 Del.Ch. 379, 112 A. 703 (1921); *In re Opinion of Justices,* 240 Mass. 616, 136 N.E. 157 (1922); *State v. Carter,* 30 Wyo. 22, 215 P. 477 (1923); *Bedford v. White,* 106 Colo. 439, 106 P.2d 469 (1940); *State ex rel. Hawkins v. Amos,* 97 Fla. 675, 122 So. 8 (1929); *In re Advisory Opinions,* 98 Fla. 843, 124 So. 728 (1929).[10] However, such cases, involving individual pension grants as gratuities payable by special appropriations out of the general funds of the State, must be distinguished from contributory pension plans such as ours, involving a Trust Fund and providing a form of deferred compensation which is a "part of the consideration for the contract of hire". *Dorsey v. State ex rel. Mulrine,* Del.Supr., 301 A.2d 516, 518 (1972). It is clear that the Statutes in question did not attempt to grant independent pension awards, supported by special appropriations, separate and apart from the Pension Plan and Trust Fund.

Finally, the State argues that there can be no impairment of contractual rights because 29 Del.C. § 5544 [11] "requires that the

---

10. In the Florida cases, the Legislature enacted a Statute providing that the name of one Hawkins be placed on the Pension Roll and be paid a pension "in like sum and manner as the confederate pensioners of the State of Florida are paid". The Pension Board found that Hawkins did not meet the general eligibility requirements and directed that his name be stricken from the confederate pension roll. In a mandamus action, the Supreme Court upheld the action of the

Board, stating that in the absence of a special appropriation for a separate and independent grant of pension, Hawkins could not receive pension benefits. The Legislature later enacted the necessary legislation for such separate pension and appropriation.

11. 29 Del.C. § 5544 provides in pertinent part:
"§ 5544. Actuarial valuations and appropriations.

Board's actuary make a valuation of the Plan at least once every three years and that the State's contribution to the Plan, based on that valuation, be sufficient to keep the Plan actuarially sound."

The thrust of this argument seems to be that it is permissible to invade the Pension Trust Fund for payment of benefits to non-contributing ineligible beneficiaries so long as actuarial adjustments may be made by future State contributions thereto. But an impairment plus such provision for future repair does not meet the constitutional guaranty of the Contract Clause of the Federal Constitution. The improper invasion of a trust fund is not excused and made proper by such promises of restitution; and this is especially so when the promises are not binding upon the future General Assemblies which must execute them from year to year. Accordingly, it is our opinion that § 5544 does not cure the infringement of contract we find here.

\* \* \* \* \* \*

We hold that Question No. 4 must be answered in the affirmative.

In view of that conclusion, it is unnecessary to reach any of the other Questions certified.

"(a) The actuary shall, by September 30, 1971, prepare an actuarial valuation of the assets and liabilities of the Fund as of December 31, 1970. On the basis of accepted actuarial practices and reasonable actuarial assumptions and tables approved by the Board, he shall determine (1) a normal rate of contribution which the State shall be required to make into the Fund in order to meet the actuarial cost of current service and (2) the unfunded past service cost, namely, the excess of the present value of future benefits over the sum of the amount in the Fund and the present value of future normal costs.

"(b) The actuary shall, at least once every 3 years after the first, prepare a valuation of the assets and liabilities of the Fund as of the preceding December 31. On the basis of each such valuation, he shall determine the appropriate adjustments to be made in the normal rate of contribution and, until it is amortized, in the unfunded past service cost.

"(c) The State's appropriation to the Fund for a fiscal year shall be based on the determinations of the normal rate of contribution and the unfunded past service cost made pursuant to the last completed actuarial valuation, as follows:

\* \* \* \* \*

"(6) The appropriation for each of the 40 fiscal years beginning with July 1, 1975 shall be the sum of the normal cost for the year and the annual payment that would be required, on a level basis, to amortize the unfunded past service cost over 40 years from July 1, 1975;

"(7) The appropriation for each fiscal year thereafter shall be the normal cost for the year."