**William L. DANGOTT, Appellee,**

**v.**

**ASG INDUSTRIES, INC., Appellant.**

**No. 48478.**

Supreme Court of Oklahoma.

Oct. 5, 1976.

Steph & Humphrey by Charles M. Humphrey, III, Okmulgee, for appellee.

Rosenstein, Fist & Ringold by J. Douglas Mann, Tulsa, for appellant.

DOOLIN, Justice.

Certiorari is requested in this case to review the action of the Court of Appeals reversing the trial court's finding that an employee was entitled to severance pay.

Plaintiff, Dangott, was employed by the defendant, ASG Industries, in its glass plant at Okmulgee, Oklahoma. Plaintiff's employment commenced in 1952 and termi-

nated August 1, 1974, with twenty-two years service rendered. The parties agree that if plaintiff is entitled to severance pay it is on the basis of twenty-two years experience @ $196.00 per year ($4,312.00).[1] There likewise appears to be no controversy the employment was terminated for any reason other than a reduction in force. There is no issue that the plaintiff was an administrative employee in quality assurance, rather than a union employee who might have been the beneficiary of a negotiated union contract. Plaintiff's employment was terminated at will, no misconduct, nonperformance nor cause question is presented in this case.

The trial court held an enforceable bilateral contract came into existence between the parties upon ASG's promulgation of its Administrative Procedure # 9–3–29 on December 28, 1971, its effective date. The Court of Appeals reversed, finding no such contract existed between the parties because the plaintiff: (1) did not know of the existence of Art. VI § A 4 of Administrative Procedure # 9–3–29, supra, note 1, until his termination; (2) plaintiff had not relied upon the terms of said provision quoted, inasmuch as he had obtained new employment; (3) plaintiff had not continued his employment in reliance upon Art. VI § A 4 and (4) there was a failure of consideration.

Plaintiff has suggested that our recent discussion and holding in *Graham v. Hudgins, Thompson, Ball and Associates, Inc.,* 540 P.2d 1161 (Okl.1975) have decided the issue as to an individual's rights at termination for severance pay, bonus and the like. We do not believe *Graham* alone is

authority for the plaintiff's recovery in this case. *Graham* decided the loss of 30% of the right to profit sharing was an unlawful restraint under 15 O.S.1971 § 217 of the individual's right to practice his engineering profession. The *Graham* case has, however, indicated this court will consider whether contractually enforceable rights may exist between the employee and the employer under the socio-economic conditions existing today. *Cantor v. Berkshire Life Ins. Co.,* 171 Ohio St. 405, 171 N.E.2d 518, 521 (1960) sets forth a contemporary and enlightened view of such contracts:

> "There has been, however, in recent years a gradual trend away from the gratuity theory of pensions. The courts, recognizing that a consideration flows to an employer as a result of such pension plans, in the form of a more stable and a more contented labor force, have determined that such arrangements will give rise to contractual rights enforceable by the employee who has complied with all the conditions of the plan, even though he has made no actual monetary contribution to the fund. See annotation, 42 A.L.R.2d 467."

We realize that it might be argued that severance pay rights may not always present the same question as retirement and pension benefits because of the facts and circumstances surrounding each instance. In this case the parties have attempted no definitive argument as to the rights of parties under such alternative situations. The basis of recovery or denial is the personnel policy set forth in plaintiff's Administrative Procedure # 9–3–29. Under Art. II §§ A and D of said procedure,

---

1. ASG on October 1, 1974, had in effect administrative procedure 9–3–29 which among other things provided:

VI—Duties of Industrial Relation Department:
 A. Prior to Termination:
 1. _ _ _ _ _ _
 2. _ _ _ _ _ _
 3. _ _ _ _ _ _
 4. A maximum of twenty-six weeks' severance pay (base) will be paid to eligible employees using the formula of one week's pay for each full year of continuous service if:
 (a) The Company initiates the termination because of a reduction in force and—
 (b) No notice has been given.
 (Note: This subsection (4) does not apply to employees terminated for cause).

retirement by reduction in force is considered termination under the regulation.[2]

Although various theories have been advanced and followed when the courts have dealt with retirement plans, none is entirely satisfactory or convincing in its approach.

*Hughes v. Encyclopedia Britannica, Inc.,* 1 Ill.App.2d 514, 117 N.E.2d 880, 42 A.L.R.2d 456 (1954) held the retirement plan, announced by the defendant company where no contribution was made by the employee, and the management and control thereof was lodged in the company, created no enforceable rights in the individual employee because it was a gratuity. See also *Molumby v. Shapleigh Hardware Co.,* 395 S.W.2d 221 (Mo.App.1965). Other courts have said the plan is not enforceable until the employees' rights have vested. *Schofield v. Zion's Cooperative Mercantile,* 85 Utah 281, 39 P.2d 342, 96 A.L.R. 1083 (1934); *Cantor v. Berkshire Life Ins. Co.* supra.

In *Hunter v. Sparling,* 87 Cal.App.2d 711, 197 P.2d 807 (1948) an award was upheld when the plaintiff employee knew of the general terms of a retirement plan, although not the details or the precise formula for computation. The court stated the employee's continued employment constituted consideration for the promise of the employer.

Courts have also found the consideration necessary to support the plan as deferred compensation for continuance service, *Siegel v. First Pennsylvania Banking and Trust Co.,* 201 F.Supp. 664 (E.D.Pa.1961);

*David v. Veitscher Magnesitwerke Actien Gesellschaft,* 348 Pa. 335, 35 A.2d 346 (1944); *Jacoby v. Grays Habor Chair & Manufacturing Co.,* 77 Wash.2d 911, 468 P.2d 666 (1970). Others have upheld the plans on the grounds the employer has made an offer of a unilateral contract, which the employee accepts by his full performance, *Amicone v. Kennecott Copper Corp.,* 19 Utah 2d 297, 431 P.2d 130 (1967).[3]

■ We conclude the rights of the parties are controlled by the principles of contract law under ordinary rules of construction, *Jacoby v. Grays Habor Chair & Mfg. Co.,* supra.

The Restatement (Second) of Contracts § 45 Draft No. 1 (1964) states:

"(1) Where an offer invites an offeree to accept by rendering a performance and does not invite a promissory acceptance, an option contract is created when the offeree begins the invited performance or tenders part of it.

(2) The offeror's duty of performance under any option contract so created is conditional on completion or tender of the invited performance in accordance with the terms of the offer."

See also Corbin on Contracts § 153 (1950):

"The employer's offered promise becomes irrevocable by him as soon as the employee has rendered any substantial service in the process of accepting; and this is true in spite of the fact that the

---

2. Art. II—CLASSIFICATION OF TERMINATIONS:
Terminations of employment will be under one of the following major classifications:
A. Reduction in force (RIF)—Meaning a permanent lack of work.
B. ------
C. ------
D. Decease, retirement, total and permanent disability.
Terminations should be classified correctly and uniformly and the reason for termination will be shown on the employee's separation notice.

3. For other theories applied to such plans see 42 A.L.R.2d 461, 470 § 6 (promissory estoppel, and trust fund beneficiary). See also 70 Columbia L.Rev. 909, "Pension Plans and Rights of the Retired Worker;" 57 Cornell L.Rev. 278, 285, "A Reappraisal of the Private Pension Systems," which suggest an application of a quantum meruit recovery, when courts may tend to strictly apply narrow and constricting conditions in denying employee benefits.

employee may be privileged to quit the service at any time."

The California Court of Appeals, 168 Cal.App.2d 705, 336 P.2d 589 (1959) in *Frietzsche v. First Western Bank and Trust Co.* observed retirement and pension plans are to be liberally construed in favor of the employee and against the employer, citing *Sigman v. Rudolph Wurlitzer Co.,* 57 Ohio App. 4, 11 N.E.2d 878 (1937). The California Court held:

"(1) Pension plans are to be liberally construed in favor of the employee. *Klench v. Board of Pension Fund Commissioners,* 79 Cal.App. 171, 186, 249 P. 46 [51] (1926).

(2) The general rule is that pension plans, formulated by an employer, are construed most strongly against the employer. *Sigman v. Rudolph Wurlitzer Co.* [supra]."

In view of evidence in *Harvey v. National Bank of Commerce of Tulsa, Oklahoma,* 504 P.2d 424, 427 (Okl.1972), this court found a unilateral contract had been entered into because, "Harvey's act in taking early retirement amounted to an acceptance of McBirney's (Bank's agent) promise of a retirement pension and made it binding, resulting in a valid unilateral contract." (Parenthetical expression supplied).

Under either theory, deferred compensation or the unilateral contract theory of acceptance, the evidence in this case will support a contract for employment entitling the employee to severance pay, *if* other elements of a contract are present.

■ Defendant, ASG Industries, suggests plaintiff had no knowledge of his right to severance pay or if he had knowledge, such knowledge was of such short duration (approximately one month), that he could not have relied upon Art. VI § 4

of the administrative procedure so as to have a vested right thereunder. We might be impressed with such argument if we were dealing in other contract areas such as sales of real estate or personalty, or contracts dealing with warranty. But here we deal with an employment contract not negotiated by a strong and aggressive union [4] but concerning non-union or administrative personnel. Construing such contracts most strongly against the employer as suggested in *Frietzsche v. First Western Bank and Trust* and *Sigman v. Rudolph Wurlitzer,* supra, we find an enforceable contract existed under the facts of this case.

■ ASG promulgated the controversial administrative procedure, # 9–3–29 and sent it to supervisory parties for no other purpose except to give notice and impart knowledge of it to its employees, and thus stabilize and promote a contented work force. Although plaintiff did not have actual knowledge of its provisions, until shortly before his termination, publication of # 9–3–29 is the equivalent of constructive knowledge on the part of all employees not specifically excluded. In *Anthony v. Jersey Central Power and Light Company,* 51 N.J.Super. 139, 143 A.2d 762, 766 (1958) the court said:

"It makes no difference that the severance pay plan was promulgated after the plaintiffs had been employed for some time by defendant. Since the employment was always at will, any announcement of a change in or addition to the compensation of the employees of any form followed by the continuance of the employees in employment constituted an effective and binding agreement at the new terms for the service rendered thereafter. Consequently, once defendant improved the terms of compensation for plaintiffs' work by announcing the

4. *Inland Steel Co. v. NLRB,* 170 F.2d 247 (7th Cir. 1948), cert. denied 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949), holding the contract is a bilateral agreement for de-

ferred wages; *Strickland v. American Bakery & Confectionery Workers Union and Industry National Welfare Fund,* 527 P.2d 10 (Okl. 1974).

institution of the severance pay plan it must be assumed that plaintiffs were thereafter working for that benefit as much as for any other benefit or item of compensation held out to them as compensation by the employer. Suppose, instead of the institution of the severance pay plan, the employer had of its own volition announced a 10% increase in the salary of the plaintiffs. Could the defendant have thereafter repudiated its assumed obligation for the increase at the end of a pay period by the argument that plaintiffs had not relied thereon because they would have continued in their jobs even if the increase had not been announced? The question answers itself and also the defendant's contention here."

 Admittedly the facts in the *Jersey* case show the plans sought to be enforced were distributed and communicated to all employees. This difference or distinction does not destroy the principles of law enunciated. Employees at will are entitled to additional compensation or benefits under any policy, because continuance in service after such policy change effects a binding agreement under the terms of the new policy. For the same principles involved, see *Bartlett v. Sterling Construction Co.*, 499 P.2d 425 (Okl.1972), a case concerning an employment contract alleged to be indefinite and lacking in mutuality. It is fundamental that one who accepts the benefits of a contract must assume the detriments. Consideration is present, the benefit to ASG is a stable contented labor force, its price, pension rights or severance pay. Oklahoma by statute indicates such a factual situation will support a contract.[5]

 It is suggested because the plaintiff obtained other employment after his termination he had not relied on the Administrative Procedure, #9-3-29, and thus there could be no enforceable contract. This argument is based on the assumption the plaintiff had to sit by and refuse employment, or lose what he might have been entitled to. It presents an employee with a "Hobson Choice."

Court of Appeals reversed; Decision of trial court reinstated.

All the Justices concur.