409 A.2d 1256 (1979)
STATE of Delaware EX REL. STATE BOARD OF PENSION TRUSTEES and Ernst Danneman, Ralph Deakyne, and Leonard Bardsley as members of said Board, Petitioners,
v.
Russell D. F. DINEEN, Respondent, and
State of Delaware, Third-Party Plaintiff,
New Castle County Board of Education, Third-Party Defendant.
Court of Chancery of Delaware, New Castle County.
Submitted October 22, 1979.
Decided November 20, 1979.
William M. Remington, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for petitioners.
Peter M. Sieglaff of Potter, Anderson & Corroon, for respondent.
*1257 BROWN, Vice Chancellor.
In this action both the petitioner, the State Board of Pension Trustees (hereafter "the Trustees"), and the respondent, Russell D. F. Dineen, (hereafter "Dineen"), have moved for summary judgment on the issue of whether Dineen was entitled to receive a service pension from the State of Delaware commencing in January 1979. This issue is presented upon a stipulated set of facts. The jurisdiction of this Court to entertain this matter is based on the premise that the petitioner, as the trustee of the State Pension Fund, is seeking instructions as to the proper administration of the trust.[*]
*1258 Except for the point of contention set forth hereafter, it is not disputed that Dineen has met all of the statutory requirements that otherwise would entitle him to receive a State pension. He was first employed by the Wilmington School District in 1947 and eventually became its Assistant Superintendent for Business Services. In 1978, as a result of the abolition of separate school districts in favor of a solitary New Castle County School District as ordered by the United States District Court for the District of Delaware, Dineen became Associate Superintendent of Personal for the new school district. He held this position until he was suspended during July 1978 and eventually terminated on December 19, 1978, for the reason hereafter described. Thus, prior to his termination of employment he had acquired 35 years of credited service with the State. During that period he made all contributions to the State Pension fund required by 29 Del.C. § 5543, the total amount of such payments being $18,970.62. He has never applied for a refund of his accumulated contributions to the pension fund.
The facts which have cast the cloud upon Dineen's otherwise undisputed entitlement to a pension may be summarized briefly as follows. During September 1977, at the request of Dineen and during their regular working hours, two school district employees performed about $150 worth of work and labor on a residence owned by Dineen. The employees refused Dineen's offer of payment for the work. Dineen did not pay the school district for the work, nor did he report to school district officials that the work had been performed. When this was discovered, criminal charges were brought against Dineen and he was suspended from his employment pending the outcome.
On September 8, 1978, Dineen entered a plea of guilty to a charge of having committed official misconduct, a misdemeanor, in violation of 11 Del.C. § 1211(2). He was sentenced to pay a fine of $1,000 and to make restitution of $150 to the school district. Subsequently, his employment with the school district was terminated because of this admission of guilt. Some two weeks thereafter, on January 4, 1979, Dineen applied for his pension. The parties agree that if Dineen is entitled to receive the pension, the payment of such benefits should have commenced as of January 1, 1979. However, the petitioning Trustees took no action on the matter until March 29, 1979, and then the action taken was no more than the following resolution:
"Resolved, that while the Board of Pension Trustees believes that Mr. Dineen is entitled to his pension as a matter of equity, there is a question of law as to whether a public official who violates the trust of his Office thereby forfeits any pension entitlement. The Board hereby requests the Attorney General's Office to petition the appropriate court for guidance in this matter."
This action followed.
The narrow question of law as to which instruction is requested may be summarized as follows: Does a State employee who is otherwise eligible to receive a State service pension forfeit that right by conduct or by the commission of a wrongful act which justifies the termination of his public employment for cause?

I.
The statutes which create and govern the State Employees' Pension Plan are found at 29 Del.C. Ch. 55. By 29 Del.C. § 5522 it is provided that a State employee shall become eligible to receive a service pension "beginning with the month after he has terminated employment" where, among other things, he has 30 years of credited service. At 29 Del.C. § 5523 it is stated that an employee with 10 years of service "shall have a vested right to a pension." And 29 Del.C. § 5525 provides that service pension payments shall be made to either "a retired employee or former employee" commencing *1259 with the month in which he becomes eligible to receive it. By § 5502 it is provided that an individual shall not receive pension payments for any month during which he is a full time employee of the State, and at § 5523 it is stated that a "former employee's vested right [to receive a pension] shall be forfeited upon his application for a refund of his accumulated contributions." (Emphasis added.) Except for these last two provisions, there are no other statutory limitations on the right of a former employee with sufficient service credit to receive his pension.
These statutes make it clear that once an employee has 10 years of credited service he acquires certain contractual rights. As stated in In Re State Employees' Pension Plan, Del.Supr., 364 A.2d 1228, 1235 (1976):
"... we hold that vested contractual rights exist under the State Pension Law and in the State Pension Fund, at least as to those employees and former employees who have statutory vested rights in service pensions or who have otherwise fulfilled eligibility requirements for pension."
And in Dorsey v. State ex rel. Mulrine, Del.Supr., 283 A.2d 834, 837 (1971) our Supreme Court held as follows:
"It is clear, however, that forfeiture of a vested right to a pension ... may be made only if there is express statutory authority in the Pension Law itself, authorizing the abrogation of such a vested right."
Compare, also, Miller v. City of Wilmington, Del.Ch., 285 A.2d 443 (1971), aff'd sub nom., City of Wilmington v. Miller, Del.Supr., 293 A.2d 574 (1972), where it was held that the fact that a pension applicant's employment had been involuntarily terminated did not work a forfeiture of his pension rights.
So here, Dineen has 35 years of credited service, his contractual right to a pension has long since vested, as a former employee as compared perhaps to a retired employee he meets the stated qualifications necessary to receive his pension benefits, he has not forfeited his right to a pension under § 5523(b) by applying for a refund of his pension contributions, and the fact that his employment was involuntarily terminated by the act of his employer does not, of itself, constitute a forfeiture of his pension rights because there is no statute so providing.
The petitioning Trustees suggest, however, that Dineen nonetheless may have forfeited his right to a pension by having committed a crime which violated the public trust placed in him by virtue of the position that he held. Despite the fact that the pension statutes contain no provision for such a forfeiture, the Trustees suggest that perhaps it should be an implied condition to all public employment that deliberate violation of the public trust constitutes a forfeiture of any right to thereafter receive a pension from public funds. For this position they rely upon various cases from other jurisdictions which appear to support this principle. Makwinski v. State, Bd. of Com'rs, Etc., N.J.Supr., 76 N.J. 87, 385 A.2d 1227 (1978); Fromm v. Bd. of Directors, Police & Fire. Retire. Sys., N.J.Super., 81 N.J.Super. 138, 195 A.2d 32 (1963); Ballurio v. Castellini, N.J.Super., 29 N.J.Super. 383, 102 A.2d 662 (1954); City of Frederick v. Quinn, Md.Ct.Spec.App., 35 Md.App. 626, 371 A.2d 724 (1977); Baltimore County Board of Trustees v. Comes, Md.Ct.App., 247 Md. 182, 230 A.2d 458 (1967); Hadden v. Consolidated Edison Co. of N. Y., Inc., N.Y. Ct.App., 34 N.Y.2d 88, 356 N.Y.S.2d 249, 312 N.E.2d 445 (1974); State v. Board of Trustees of Policemen's Pension, W.Va.Supr., 148 W.Va. 369, 135 S.E.2d 262 (1964).
Moreover, the Trustees suggest that despite the seemingly broad and all-inclusive language in Dorsey and Miller, the adoption of such an "implied condition of honorable service" would not be in conflict with Delaware case law. They suggest that on its facts the result in Dorsey has no application to the present case since there the pension was both vested and applied for prior to the commission of the criminal act on which the attempted refusal of the pension was based. In addition, the crime involved in Dorsey was that a manslaughter unrelated to the *1260 employment and thus it did not involve a violation of the public trust. Likewise, Miller, on its facts, involved a disability pension for an injury incurred during employment but which was not discovered until after the employment had been terminated as a result of circumstances connected with a criminal act unrelated to the applicant's employment. The Trustees point out that in affirming an appeal, the Supreme Court found it unnecessary in Miller to decide whether the employment had been terminated voluntarily or involuntarily in view of the fact that injury giving rise to the disability occurred prior to termination. Thus, the Trustees suggest that neither Miller nor Dorsey, because of their facts, pose any impediment to the announcement by this Court of an implied "honorable service" condition since the statements of the law emanating from those cases did not deal with situations in which the public trust was violated as does the situation here.
Finally, the Trustees point out that to adopt such an implied condition as a part of any contractual right to receive a service pension would not amount to an attempt to alter contract rights subsequent to the time of vesting since any such implied condition of honorable service would necessarily run from the inception of employment and thus would have formed a part of any contractual right to a pension as of the time that the right vested under the statute.
I think, however, that the very indecision of the Pension Trustees highlights the reason why it is not for this Court to read into the pension statutes an implied forfeiture of a vested pension right. The Trustees themselves, as evidenced by their March 29 resolution, feel that as "a matter of equity" Dineen should receive his pension. Nonetheless, as members of the executive branch of government, they are reluctant to act on the basis of what they feel the law should be. Rather, they defer to the judicial branch for instruction, suggesting that possibly the better policy of the law would be to deny a pension to public servants who admit to crimes of official misconduct while in office. And this, I think, is the key, for it is the legislature, and not the courts or the executive branch, which is charged with the responsibility of setting the public policy by means of the laws enacted. Whenever possible, it may be the function of the Courts to announce that policy to the extent that it may be derived from the language employed by the General Assembly. But, as stated in Federal United Corporation v. Havender, Del. Supr., 11 A.2d 331, 337 (1940):
"The general rule of statutory construction repeatedly affirmed by the courts of this state generally, and, in particular, by this court, is that where the language of a statute is plain and conveys a clear and definite meaning, the courts will give to the statute the exact meaning conveyed by the language, adding nothing thereto, and taking nothing therefrom. * * * And, specifically, where the Legislature has made no exception to the positive terms of a statute, the presumption is that it intended to make none, and it is not the province of the court to do so. * * *
"It is for the Legislature not for the court, to declare the public policy of the state; and it is not, therefore, the function of the court to graft an exception on the plain and positive terms of the statute."
In short, judicially created exceptions to the benefits extended by the language of a statute are not favored where there is no indication that the General Assembly intended them. Justice v. Gatchell, Del.Supr., 325 A.2d 97 (1974). When to this it is added that it is the fundamental intent and purpose of the State pension plan to encourage qualified individuals to enter and remain in public service, In re State Employees' Pension Plan, supra, and that public employee pension statutes are to be construed liberally in favor of the recipients, Miller v. City of Wilmington, supra, then it seems overwhelmingly clear that this Court should not determine by implication that grounds exist for the forfeiture of a vested contractual pension right because of a criminal act of official misconduct in office in the face of a *1261 total absence of legislative expression on the subject, one way or the other.
Moreover, this decision does not necessarily warrant an inference that the payment of a pension to one in Dineen's position would constitute an unjust use of public funds. If a person has faithfully served his public employer for more than 30 years prior to committing one fatal act, should he not perhaps be compensated nonetheless by the pension he has earned by virtue of the good he performed prior to his one act of transgression? But for his lack of judgment in committing the criminal act of official misconduct, Dineen had earned the right to his pension under the law, and thus payment to him would not have been a misuse of public funds. For his criminal act, he has been directed to make restitution, he has been fined, and he has lost his job. To add to this the additional caveat that this one, same act also makes it a misuse of public funds to pay him the pension benefits which he had worked 35 good years to achieve would be to declare a forfeiture of a nature most severe. Equity abhors a forfeiture. Jefferson Chemical Co. v. Mobay Chemical Co., Del.Ch., 267 A.2d 635 (1970); Old Time Petroleum Co. v. Turcol, Del.Ch., 156 A. 501 (1931). If such a forfeiture is to be made a part of the terms of public employment, it should be announced by the General Assembly and the conditions and conduct that would work such a forfeiture should be clearly designated.
Since there is nothing in the pension statutes to indicate that Dineen's act of official misconduct should work a forfeiture of the pension rights acquired through his prior 35 years of credited service, it follows that summary judgment should be entered in his favor and the petitioner Pension Trustees instructed that he is entitled to receive his pension benefits, commencing as of January 1, 1979. The motion of the petitioner for summary judgment will be denied.

II.
The aforesaid ruling gives rise to a related question, namely, is Dineen entitled to receive interest from the date on which the first pension payment should have been made? The Trustees would have this answered in the negative on the theory that pre-judgment interest does not run against the State. I think, however, that a contrary answer is found in Dorsey v. State ex rel. Mulrine, Del.Supr., 301 A.2d 516 (1972). There, in dealing with a pension found to be owing from the City of Wilmington, the Supreme Court noted that performance by the City of its contractual duty to make payments under the pension agreement was due as of a specified date, and that in refusing to make such pension payments the City had breached that duty. It was thereafter stated that "[n]ormally, upon such a breach, interest will run from the date the payment is due." 301 A.2d 518.
Accordingly, the Trustees here are instructed that Dineen is entitled to receive interest on all pension payments to which he was entitled and which he did not receive, commencing with the payment due as of January 1979 and thereafter.

III.
Finally, Dineen takes the position that he should also be awarded the counsel fees and expenses occasioned to him by this action. His argument is that the Trustees felt him to be entitled to his pension as a matter of equity, but that they nonetheless refused to pay it to him and thereby caused him to incur needless legal expenses in participating in this suit, the result of which has been to bring about a clarification of the pension laws and thus provide a benefit to the Pension Trustees, the pension fund itself, and all beneficiaries of the fund. For aiding in this clarification of the administration of the State pension plan, he feels that he should be equitably entitled to counsel fees and expenses.
However, I do not view the action as having been brought solely to seek a ruling as to the administration of the pension trust. It was brought primarily to determine whether or not Dineen should receive a pension. The resolution of the Trustees makes it clear that the action was brought *1262 as much for Dineen's personal benefit as it was for any overall benefit the Trustees might derive with regard to similar problems in the future. They wanted to pay him, but wanted someone else to tell them that it was all right to do so. And the entire situation was bred in the first place by an admitted criminal act on the part of Dineen.
An allowance of counsel fees and expenses is a matter of discretion in this Court. Based upon the facts of this matter, I do not feel it proper to require the State to pay the counsel fees incurred by one in defending his personal position in a situation brought about initially by his criminal act, regardless of any secondary benefit that may have been provided as to the future administration of their duties by the Pension Trustees. The application for the allowance of counsel fees and suit expenses will be denied.
An appropriate form of order may be submitted.
NOTES
[*] There is precedent for this jurisdictional approach. See In Re State Employees' Pension Plan, Del.Supr., 364 A.2d 1228 (1976). And while the normal route to appeal or contest the denial of a State pension would be through proceedings at law, the differentiating factor here is that the petitioning Trustees have not yet acted on Dineen's application, contending that they need instruction before they can do so.