Thomas L. BAKER, Bill C. McCawley, Thomas J. Riddle, Frank M. Comfort, Dan Herrington, Steve W. Cain and Jack Vickers, Plaintiffs,

v.

The OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM; the Oklahoma Firefighters Pension and Retirement Board; Paul Gallahar, Wendell Gilliam, Haskill Starbuck, James Smith, John Soos, Larry Barrett, Wyman Dobbs, James Luckett, Francis Campbell, Meredith Lacey and Fred Rucker, in their official capacities only; the Oklahoma Police Pension and Retirement System; the Oklahoma Police Pension and Retirement System; the Oklahoma Police Pension and Retirement Board; Everette Vanhoesen, Jeffrey Taylor, Jim Wingert, Charles Wingo, Darrell Routh, Chester Hodge, David Been, Jerry Bowen, Joe Johnson, Kenneth Nash and Gary Livingston, in their official capacities only, Defendants.

No. 64354.

Supreme Court of Oklahoma.

March 25, 1986.

Rehearing Denied May 20, 1986.

Chapel, Wilkinson, Riggs, Abney & Henson by Donald L. Bingham and M.D. Bedingfield, Tulsa, for plaintiffs.

Michael C. Turpen, Atty. Gen., John D. Rothman, Asst. Atty. Gen., Oklahoma City, for defendants.

Ferguson & Litchfield by E. Paul Ferguson and Thomas E. Prince, Oklahoma City, specially designated counsel for intervenors Governor George Nigh and Senator Marvin B. York.

LAVENDER, Justice:

The United States District Court for the Western District of Oklahoma has certified two questions of law to this Court pursuant to the Uniform Certification of Questions of Law Act.[1] The statement of facts accompanying the certification of questions indicates that the litigation which has produced the questions has grown out of a challenge brought by plaintiffs as individuals and as representatives of various classes of firefighters and police officers[2] to the efficacy of the Oklahoma Legislature's repeal of statutes which had granted automatic pension adjustments as part of the firefighters' and police officers' pension programs. The two statutes repealed by

1983 Okla.Sess.Laws, Ch. 143 § 8, were 11 O.S.1981 § 49–136 and 11 O.S.1981 § 50–120.[3]

The repealed statute which had been codified as part of the Firefighters Pension and Retirement System, 11 O.S.1981 § 49–136, provided:

Any person receiving a pension who became a member of the System prior to January 1, 1981, which was based upon a percentage of the average salary paid to him during the last thirty (30) or sixty (60) months of his service, shall have such pension, or the pension of his or her surviving spouse, as the case may be, increased or decreased by one-half (½) of all increases or decreases which shall occur in the salary of the regular fire fighters in the municipality from which said person is receiving a pension; provided that said pension shall never be reduced below the original pension paid to such person for that purpose. The term "regular fire fighters" shall for this purpose be defined as salaried fire fighters who have reached their maximum salary as "privates" in their departments and have not been promoted to a position of rank. It shall be a violation of this article to establish a special classification for the purpose of evading the intent of this section.

The parallel provision of the Police Pension and Retirement System, 11 O.S.1981 § 50–120, stated:

The pension of any member or beneficiary of any member whose membership began prior to January 1, 1981, shall upon the increase or decrease of the base salary of a regular police officer of a municipality be adjusted by one-third (⅓) of such increase or decrease, provided that no pension shall be less than one-third (⅓) of the base salary of a regular

---

1. 20 O.S.1981 §§ 1601 through 1612.

2. The certifying court notes two classes of firefighters and police officers affected by this litigation: 1) those firefighters and police officers who were fully eligible for, or had been awarded, their retirement or disability benefits prior to May 26, 1983; and 2) those firefighters or police officers who joined their respective pen-

sion systems prior to January 1, 1981, but who were not yet eligible to receive pension benefits as of May 26, 1983.

3. H.B. No. 1091, which contained the provision repealing the pension adjustment statutes, became effective May 26, 1983.

police officer, nor be reduced to an amount less than the pension at which the officer retired.

The two questions certified for answer by this Court are:

1. Was it possible for any police officer or firefighter to acquire a vested or accrued right susceptible of protection by Okla. Const. Art. II, § 15 or Art. V, § 54 to the pension enhancement provisions of 11 O.S.1981, §§ 49–136, 50–120?

2. Is 1983 Okla.Sess.Laws c. 143, § 8, which became effective on May 26, 1983 and which repealed 11 O.S.1981, §§ 49–136, 50–120, unconstitutional under Okla. Const. Art. II, Section 15, or under Art. V, Section 54 as applied to firefighters or police officers who on May 26, 1983 had neither completed twenty years of credited service nor been awarded a disability pension pursuant to his or her respective pension system?

### I.

The two provisions of the Oklahoma Constitution referenced by the first question posed by the federal court provide respectively that the State of Oklahoma shall pass no laws impairing the obligations of contracts[4] and that the repeal of a statute shall not affect any right accrued by virtue of the repealed statute.[5] We thus construe the question asked to request a determination of whether the plaintiff classes had acquired contractual rights under the repealed pension adjustment provisions which might be subject to the protections of our constitutional provisions.

In *Baker v. Tulsa Building & Loan Ass'n,*[6] we referred to the rights protected under these constitutional provisions as

vested rights and offered the following observation:

A "vested right" is the power to do certain actions or possess certain things lawfully, and is substantially a property right, and may be created either by common law, by statute, or by contract. And when it has been once created, and has become absolute, it is protected from the invasion of the Legislature by those provisions in the Constitution which apply to such rights. And a failure to exercise a vested right before the passage of a subsequent statute, which seeks to divest it, in no way affects or lessens that right.

We must determine if, and at what point, plaintiff's rights became absolute under the repealed statutes.

Defendants and intervenors in this case argue that the rights of none of the classes represented by plaintiffs could ever become absolute. Defendants rely on the case of *Ross v. Board of Trustees,*[7] for their proposition that the entitlement to pension payments is always subject to future contingencies and is therefore a mere expectancy which can never become a "vested" right. Intervenors rely on the case of *City of Duncan v. Bingham,*[8] for their proposition that a pension is a mere gratuity which is subject at any time to being forfeited, withdrawn or terminated. As will be discussed within, we do not find either case or line of reasoning to be dispositive of the questions posed.

Our review of cases dealing with the questions here presented require a conclusion that, under Oklahoma law, the right to a pension would vest, or become absolute, upon the pension recipient's becoming eligi-

---

4. Article II § 15, states:
   No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties.

5. Article V § 54, states:
   The repeal of a statute shall not revive a statute previously repealed by such statute,

nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute.

6. 179 Okl. 432, 66 P.2d 45 (1936), (quoting Court's syllabus).

7. 201 Okl. 476, 207 P.2d 254 (1949).

8. 394 P.2d 456 (Okla.1964).

ble for payment of the pension. In the cases of *Wallace v. Childers,*[9] and *Roberts v. Board of Trustees,*[10] we acknowledged that the pension funds established pursuant to statutes were in the nature of trust funds, and the payments made from those funds constituted a part of the compensation for public employees for services previously rendered to the public. Our reading of *Ross v. Board of Trustees,*[11] contrary to that of defendants, indicates that the right to a pension vests, or becomes absolute, at the time one becomes eligible to receive that pension. In *Board of Trustees v. Kern,*[12] we recognized the generally held view that public employees who have voluntarily contributed to a retirement fund have a vested contractual right to receive benefits from the fund once their payment becomes due.[13] We have also stated that the right of a claimant to a pension is controlled by the terms of the statute in effect when the right to a pension vests and have implied that that vesting occurs as of the date of retirement.[14]

The statement made by this Court in *City of Duncan v. Bingham,*[15] upon which intervenors attempt to rely in their arguments, we find must be disapproved. *Bingham* involved a workers' compensation action in which it was claimed that a workers' compensation award should be reduced or eliminated because the worker was eligible for a pension under the disability provisions of the firefighters' retirement plan. The basis for this argument was 85 O.S.1961 § 3(3), which provided that an employee eligible for benefits for injured employees available through state law, city charter or municipal ordinance, which were equal to or better than those provided under the workers' compensation laws would not be entitled to the workers' compensation benefits. In *Bingham* we appeared to state that since the disability retirement benefits were a mere gratuity they could not be considered benefits in compensation for the firefighters' injuries. We now feel that the better analysis would be that also alluded to in *Bingham* to the effect that since the disability retirement benefits are in the nature of a deferred compensation for services previously rendered to the public there is no relation between these benefits and the benefits for employees injured in the course of employment referred to in section 3(3). In this regard the disability retirement benefits would have come under the provisions of 85 O.S.1961 § 45, which prohibited the consideration of benefits, savings or insurance of the injured employee in determining the amount of compensation to be paid under the workers' compensation act.

In reviewing the statements of this Court in the cases cited, it is apparent that the view of pension benefit rights taken in this jurisdiction has been that such rights neither vest nor accrue until the contract between the state and the beneficiary comes into existence. We have also examined the views expressed by other jurisdictions regarding the time of vesting of such rights. In doing so we have found great diversity. Those views vary both as to how the retirement pension relationship between the state and its employees is perceived and as to when that relationship matures into vested rights. Some jurisdictions have ex-

9. 198 Okla. 604, 180 P.2d 1005 (1947).

10. 292 P.2d 408 (Okla.1956).

11. Supra, note 7.

12. 366 P.2d 415 (Okla.1961).

13. In *Kern,* the rights of a widow of a police officer to receive benefits was at issue. This was the same situation involved in *Ross,* except that the widow in *Ross* had been married to a retired firefighter. This Court distinguished the results in *Ross,* where a statute, passed after the retirement of the firefighter but prior to his death, reducing the benefits payable to the widow was held applicable to the widow's benefits, from that in *Kern,* where the widow's rights were held to be those in effect at the retirement of her husband, on the basis that the retirement fund in *Ross* was not a contributory fund on the part of the firefighters whereas the police officers' fund was.

14. *Board of Trustees v. Burns,* 348 P.2d 1067 (Okla.1959); *Board of Trustees v. Naughton,* 197 Okl. 592, 173 P.2d 425 (1946).

15. Supra, note 8.

pressed the view that the relationship is contractual in nature and that the contract regarding retirement comes into existence and provides protectible interests at the time of employment.[16] Others, while espousing the contractual nature of the employment, take the view that the protectible interests vest at some time after employment but prior to reaching eligibility to receive benefits.[17] Yet other jurisdictions, to avoid the perceived illogic of characterizing such rights as contractual while still holding them to be subject to modification, have characterized the rights to pension benefits themselves as statutory in nature rather than contractual.[18]

We have reviewed the various approaches advanced by the opinions regarding the conceptual problem of when rights under a retirement pension plan come into existence. We find the best resolution of that problem to be that inherent in our own previous case law. In a review of its case law, which is closely parallel to the reasoning in our own, the Supreme Court of Delaware made the following observations: [19]

In *State Employees' Pension Plan* this Court ruled that vested contractual rights were held by those employees and former employees who satisfied the eligibility requirements for a pension, i.e., a pension contract exists when the pension is vested. 364 A.2d [1228] at 1235 [1976]. Although the Court did not consider whether contractual rights inured to employees, whose pensions had not yet vested, this issue was resolved in *Grant v. Nellius*, Del.Supr., 377 A.2d 354 (1977). That decision, construing the right to a cost-of-living allowance, described *State Employees' Pension Plan* as being based on the premise that those who participate in a pension plan acquire contractual rights upon fulfillment of the eligibility requirements. 377 A.2d at 357. See also *State ex rel. State Board of Pension Trustees v. Dineen*, Del.Ch., 409 A.2d 1256, 1259 (1979) (pension vests upon completion of minimum period of credited service). Furthermore, *Grant* held that there was no protected interest in a statutory benefit if the statute was repealed prior to its effective date, and that such future benefits could lawfully be adjusted or eliminated. The import of these cases is that pension rights may be changed at any time before they become vested.

Thus, it is clear that no contract exists between an employee and the State, concerning the state pension plan, unless and until the pension vests. This result is consistent with that reached in other jurisdictions. See, e.g., *Police Pension and Relief Board v. McPhail*, 139 Colo. 330, 338 P.2d 694 (1959); *City of Jacksonville Beach v. State*, Fla.Supr., 151 So.2d 430 (1963); *Hickey v. Pension Board*, 378 Pa. 300, 106 A.2d 233 (1954). See also 60 Am.Jur.2d Pensions & Retirement Funds § 49, at 920–21; § 55, at 929–30 (1972)....

Viewing the contract between the state and its employees as coming into existence at the point of eligibility allows the necessary flexibility in fiscal planning which must be given the Legislature. This view also avoids the necessity of engaging in the tortuous applications of contract law which other jurisdictions have applied in finding that rights, which they have characterized as being in existence, remain subject to unilateral modifications. This view also realistically acknowledges the contingent nature of the relationship as it ripens into a contractual obligation on the part of the state.

---

**16.** E.g. *Yeazell v. Copins,* 98 Ariz. 109, 402 P.2d 541 (1965); *Betts v. Board of Administration,* 21 Cal.3d 859, 148 Cal.Rptr. 158, 582 P.2d 614 (1978).

**17.** E.g. *Singer v. City of Topeka,* 227 Kan. 356, 607 P.2d 467 (1980); *Blackwell v. Quarterly County Court,* 622 S.W.2d 535 (Tenn.1981).

**18.** E.g. *Pineman v. Oechslin,* 195 Conn. 405, 488 A.2d 803 (1985), this view was adopted in answer to those jurisdictions adopting the views that while rights vested prior to eligibility for receipt of pensions these rights remained subject to "reasonable or necessary" modifications.

**19.** *Petras v. State Board of Pension Trustees,* 464 A.2d 894, 896 (Del.1983).

■ We hold that under Oklahoma law the right to the retirement pension benefits provided to firefighters and police officers under our state statutory schemes becomes absolute at the time those benefits become payable to those eligible. Our answer to the first certified question is: Those firefighters and police officers who had retired or who could have retired and become eligible for payment of pension benefits prior to the effective date of the repeal of the pension adjustment provisions acquired a right under those provisions which may not be detrimentally affected by subsequent acts of the Legislature. Oklahoma Constitution, Art. II § 15 and Art. V § 54.

## II.

■ The second question presented for answer by the federal court concerns only those classes of firefighters and police officers who had not become eligible for payment of pension benefits prior to the repeal of the pension adjustment provisions. Under the view adopted in this jurisdiction, the rights of those classes did not become absolute and susceptible to the protections of Art. II § 15 and Art. V § 54 of the Oklahoma Constitution prior to the effective date of the repeal. Our answer to the second question is: 1983 Okla.Sess.Laws, Ch. 143 § 8, is not unconstitutional under the provisions of Oklahoma Constitution, Art. II § 15 or Art. V § 54, as applied to police officers or firefighters who had not become eligible for payment of pension benefits prior to May 26, 1983.

SIMMS, C.J., and HODGES, HARGRAVE and WILSON, JJ., concur.

OPALA and SUMMERS, JJ., concur in result.

DOOLIN, V.C.J., dissents.

KAUGER, J., disqualified.

DOOLIN, Vice Chief Justice, dissenting.

The Court today holds the right to retirement pension benefits provided to firefighters and police officers vest at the time those benefits become payable to those eligible. This decision ignores the fact that the promise of generous pension plan benefits are part of the basis of the bargain which induces persons to accept public employment.

When persons accept public employment, they are promised certain rights and benefits in exchange for their services. The retirement benefits are a valuable part of the consideration for entering into and continuing in public service. Since public employment seldom pays salaries comparable to those found in the private sector, these benefits are a prime inducement in the recruiting and retaining of qualified employees.

These mutually agreed upon benefits are deferred compensation and as such are vested contractual rights upon the acceptance of employment.

In *Dangott v. ASG Industries, Inc.*, 558 P.2d 379 (Okl.1976) we cited with approval *Cantor v. Berkshire Life Ins. Co.*, 171 Ohio St. 405, 171 N.E.2d 518 (1960) which sets forth a contemporary and enlightned view of such contractual rights:

There has been, however, in recent years a gradual trend away from the gratuity theory of pensions. The courts, recognizing that a consideration flows to an employer as a result of such pension plans, in the form of a more stable and more contented labor force, have determined that such arrangements will give rise to contractual obligations enforceable by the employee who has complied with all the conditions of the plan, even though he has made no actual monetary contribution to the fund."

The fact that the individual may have contributed to his pension fund, merely strengthens the thrust and force of the last cited Ohio case.

Other jurisdictions have faced this issue. In *Betts v. Board of Administration*, 21 Cal.3d 859, 148 Cal.Rptr. 158, 582 P.2d 614 (1978) the California Supreme Court said:

"A public employee's pension constitutes an element of compensation, and a vested contractual right accrues upon the acceptance of employment."

In *Leonard v. City of Seattle,* 81 Wash.2d 479, 503 P.2d 741 (1972) a declaratory judgment action to determine the validity of a forfeiture provision of pension law, the Washington Supreme Court discussed the nature of pension right and stated:

> Pension rights, because of their nature as deferred compensation, vest upon the commencement of employment or service. They constitute property and as property amount to an estate. Plaintiff's property in a pension, therefore, seems to us to be much like his property interests in paid up insurance, his bank accounts, his home and furniture and his automobile. In short his pension rights are an integral part of his estate."

I believe the cases cited above reflect a better reasoned and eminently fairer analysis of the nature of pension benefits. The class of plaintiffs in the instant case accepted employment contracts partly because of the pension plan, including the cost of living adjustments. The plaintiffs had a reasonable expectation that the contract of employment they agreed to upon the acceptance of employment would be honored by the employer. Today's decision defeats their contractual rights and in my opinion is contrary to Art. V. § 54 of the Constitution of Oklahoma and may inhibit a party's right to the fruits of his industry, Art. II § 2 Okla. Constitution.