2005 OK CIV APP 67

**Richard Henry MULLINS, on behalf of himself and those similarly situated, Plaintiff/Appellant,**

v.

**OKLAHOMA PUBLIC EMPLOYEES RETIREMENT SYSTEM, and Stephen C. Edmonds, Executive Director, in his individual and official capacity, Don Kilpatrick, Howard Conyers, Vic Thompson, Carroll Fisher, Richard Haughland, Oscar B. Jackson, Jr., DeWayne McAnally, and Faye Waits, Trustees for the Oklahoma Public Employees Retirement System, in their official and individual capacities, Defendants/Appellees.**

No. 100,439.

Court of Civil Appeals of Oklahoma, Division No. 3.

April 22, 2005.

Certiorari Dismissed Sept. 13, 2005.

Keith A. Ward, Richardson, Stoops, Richardson & Ward, Tulsa, OK, for Appellant.

Wellon B. Poe, Assistant Attorney General, David L. Kearney, Gable & Gotwals, Oklahoma City, OK, James M. Sturdivant, Amelia A. Fogleman, Gable & Gotwals, Tulsa, OK, for Appellees.

Opinion by LARRY JOPLIN, Presiding Judge.

¶ 1 Plaintiff/Appellant Richard Henry Mullins (Mullins), a retired state employee, seeks review of the trial court's Order granting a Motion to Dismiss filed by Oklahoma Public Employees Retirement System (OPERS) and individually named OPERS trustees (Trustees) (collectively Defendants). Mullins contends the trial court erred in dismissing his case because Defendants violated state and federal statutes, constitutional rights and the common law when they denied him prior service credits towards retirement benefits for the two years he served in the military. Upon review of the record and law, we find no error and therefore affirm.

¶ 2 Mullins served in the military between July 1956 and July 1958. He went to work for the Oklahoma Public Health Department in 1986. Ultimately, Mullins retired as a state employee and began collecting retirement benefits from the public employee retirement system, OPERS. Mullins never applied for retirement credits based upon his two years of military service nor did he pursue administrative remedies to obtain such credits.

¶ 3 In September 2003, Mullins individually and on behalf of others similarly situated filed a Petition against OPERS and Trustees in the District Court of Oklahoma County seeking damages for the alleged wrongful failure to grant credits for preemployment military service. On Defendants' motion, the trial court dismissed the suit for failure to state an actionable claim.

¶ 4 In this appeal, Mullins alleges the trial court erred in dismissing his suit because the failure to grant retirement credits violated state statutory rights,[1] federal statutory rights[2] and the Oklahoma Constitution.[3]

---

1. 72 O.S. § 67.13a and 74 O.S. § 901, et. seq.

2. 38 U.S.C. § 4301 et. seq., the Uniform Services Employment and Reemployment Rights Act (USERRA).

Mullins further contends the trial court erred in granting immunity to Trustees. Lastly, Mullins complains the trial court erred by including in its order a matter not previously raised or briefed. Defendants argue that Mullins' suit was properly dismissed because neither state nor federal statutes apply; Mullins failed to pursue administrative remedies; and because Mullins failed to establish a loss of retirement benefits to which he was entitled.[4]

 ¶ 5 Whether retirement credit is given for military service is a matter of statutory construction and a question of law. We review questions of law *de novo*.[5] We first review state statutory rights regarding military service and retirement credits.

 ¶ 6 Generally, statutory rights to retirement benefits ripen into contractual rights once state employees become eligible for payment of those benefits.[6] At that point, statutory retirement benefits receive constitutional protection[7] and protection from being diminished by the legislature, either through repeal[8] or passage of a new statute.[9]

¶ 7 Pertinent Oklahoma statutes to this appeal are found in Title 72 (Soldiers and Sailors) and in Title 74 (State Government). Through these statutes, war veteran state employees can receive up to five (5) years credit towards retirement benefits based upon prior military service. Title 72 O.S. 1997 § 67.13a[10] conferred such benefits on war veterans through 1998,[11] and, 74 O.S. 1998 § 913 confers such benefits historically and through the present.

¶ 8 Section 67.13a, although dropping the provision in 1998 bestowing retirement credits on war veterans, continues to define "war veterans"[12] as those having specified dates and/or circumstances of service. Tile 74 O.S. § 902 incorporated that definition by reference, through the year 1998, in the statutory definition of "military service".[13] In 1998, § 902 defined " 'military service' by setting forth the same dates and circumstances as

3. Okla. Const., Article XXIII, § 12.

4. The Defendants did not address Mullins' Oklahoma Constitutional argument.

5. *Cable v. State ex. rel. Okla. Police Pension & Ret. Bd.*, 2001 OK CIV APP 99, ¶ 4, 31 P.3d 392.

6. *Bordwine v. Oklahoma Firefighters Pension and Retirement System*, 2004 OK CIV APP 75, ¶ 6, 99 P.3d 703 (Cert.den., Sept. 13, 2004); *Baker v. Oklahoma Firefighters Pension and Retirement System*, 1986 OK 8, ¶ 9, 718 P.2d 348, 352.

7. *Baker v. Oklahoma Firefighters Pension and Retirement System*, 1986 OK 8, 718 P.2d 348.

8. Okla. Cons't. Art. V § 54. Repeal of statute—Effect: "The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute."

9. Okla. Cons't. Art. 2 § 15. Bills of attainder—Ex post facto laws—Obligation of contracts—Forfeitures: "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed ..."

10. 72 O.S.1991 § 67.13a: "War veterans, as defined above, shall receive maximum benefits available for each year of creditable service, not to exceed five (5) years, for active military service for retirement benefits in the retirement systems

within the State of Oklahoma ..."; *See also* 72 O.S.1998 § 67.13a.

11. 74 O.S. § 913(A)(3): "Any member who served in the Armed Forces of the United States, as defined in paragraph (23) of Section 902 of this title, prior to membership in the Oklahoma Public Employees Retirement System shall be granted prior service credit, not to exceed five (5) years, for those periods of active military service during which he or she was a war veteran."

12. 72 O.S.1991 § 67.13a: "The words 'war veterans' ... shall be construed to mean ... [those who] served in the Armed Forces ... (a) ... April 6, 1917, to November 11, 1918 ... (b) ... as members of the 45th Division at any time during the period from September 16, 1940, to December 7, 1941 ... (c) ... at any time during the period from December 7, 1941, to December 31, 1946 ... (d) ... from June 27, 1950, to January 31, 1955 ... (e) ... during a period of time in which the United States participated in a war, campaign or battle ... (f) ... in a combat zone ... (g) ... August 5, 1964, and ended on May 7, 1975 ... (h) ... August 1, 1990, and ended on December 31, 1991 ... The term 'war veterans' shall include only those persons who shall have served during the times or in the areas prescribed hereinabove, and those persons who are awarded service medals ..."; *See also* 72 O.S.1998 § 67.13a(6)(a) that includes the dates February 28, 1961 and ended on May 7, 1975.

13. 74 O.S.1991 § 902(23).

those delineated in § 67.13a." [14] Mullins military service does not fall within the dates or circumstances set out in the statutory definitions of "war veterans" or "military service."

¶ 9 OPERS is obligated to distribute income to beneficiaries in accordance with the law.[15] However, no Oklahoma statute mandates OPERS credit 1956 through 1958 preemployment military service when calculating retirement benefits. Thus, OPERS does not violate state law when it does not credit such service.

■ ¶ 10 Mullins contends that even if retirement credits are not available under Oklahoma law, federal statutes mandate such credits be granted. Mullins relies upon the Uniformed Services Employment and Reem-

ployment Rights Act (USERRA or the Act) for support of this contention.[16] Consequently, we examine the Act.

■ ¶ 11 The general purpose of the US-ERRA is to eliminate or minimize disadvantages to civilian careers and employment that results from uniformed service.[17] The Act seeks to ensure that veterans are not "treated more harshly than non-veterans."[18] An employer is prohibited under the Act from engaging in discrimination that is substantially motivated by "service in the uniformed services,"[19] during the initial and re-employment process, during the decision making process regarding retention and promotion, and when granting any benefit of employment,[20] whether the service occurred before

---

**14.** 74 O.S.1998 § 902(22); 74 O.S.2004 § 902(23):(a) " 'Military service' means ... [those who] served as follows: (1) in the Armed Forces ... from April 6, 1917, to November 11, 1918 ... (2) ... as members of the 45th Division at any time during the period from September 16, 1940, to December 7, 1941 ... (3) ... from December 7, 1941, to December 31, 1946 ... (4) ... from June 27, 1950, to January 31, 1955 ... (5) ... time in which the United States participated in a war, campaign or battle ... (6)(a) February 28, 1961, and ended on May 7, 1975 ... (6)(b) ... August 5, 1964, and ended on May 7, 1975 ... (7) ... August 1, 1990, and ended on December 31, 1991 ... (b) an eligible member under this paragraph shall include only those persons who shall have served during the times or in the areas prescribed in this paragraph, and those persons who are awarded service medals ..."

**15.** Title 74 O.S. § 909.1(I): "The Board shall distribute the corpus and income of the System to the members and their beneficiaries in accordance with the System's laws and rules and regulations."

**16.** 38 U.S.C. § 4301 *et seq.*, *specifically* 38 U.S.C. § 4311(a).

**17.** 38 U.S.C. § 4301(a) articulates the purposes of the USERRA: "The purposes of this chapter are—(1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service; (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and (3) to pro-

hibit discrimination against persons because of their service in the uniformed services."

**18.** 38 U.S.C. § 4311(c): "An employer shall be considered to have engaged in actions prohibited—(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services *is a motivating factor in the employer's action*, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; or ..." *(Emphasis added.)*

**19.** 38 U.S.C. § 4303(13): "The term 'service in the uniformed services' means the performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, a period for which a person is absent from a position of employment for the purpose of an examination to determine the fitness of the person to perform any such duty, and a period for which a person is absent from employment for the purpose of performing funeral honors duty as authorized by ..."

**20.** 38 U.S.C. § 4311(a): "A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied *initial employment, reemployment, retention in employment, promotion, or any benefit of employment* by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." *(Emphasis added.)*

or during employment.[21]

¶ 12 The term "benefit of employment" includes pension plans,[22] but pension plans are generally excluded from the term "employer" under the Act,[23] so to limit their liability to violations of provisions specifically dealing with pension plans. The Act specifically precludes pension plans from discriminating against employees who leave work to serve in the military.[24] The plan must give service credit to employees who were away from work as if no break in employment occurred.[25] Interim military service is thus considered the equivalent of employment service for purposes of determining "nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan."[26] This prevents employees who serve in the military during their employment from being treated more harshly than those who do not so serve.

¶ 13 The Act does not, however, go so far as to require veterans be treated better than non-veterans.[27] Nor is the Act invoked when all similarly situated employees are denied a benefit of employment that is granted to qualifying veterans.[28]

¶ 14 The record in the present case fails to show OPERS violated the Act because (1) pension plans are specifically excluded from general provisions of the Act pertaining to employers; (2) no violation of specific provisions of the Act mandating service credits for interim military service was shown because the service in issue occurred prior to employment and thus fell outside the scope of the pension provisions of the Act; (3) the claimed benefit is denied to all similarly situated individuals; and (4) the claimed discrimination does not differentiate between veterans and non-veterans. USERRA does not mandate the relief sought by Mullins.[29]

■ ¶ 15 Because Mullins did not establish a right to such retirement credits under state or federal laws, he did not establish a property right subject to due process protection.[30]

**21.** *Petersen v. Department of Interior,* 71 M.S.P.R. 227 (1996) (harassment on account of prior service in the uniformed services invokes the protections of USERRA).

**22.** 38 U.S.C. § 4303(2): "The term 'benefit', 'benefit of employment', or 'rights and benefits' means any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a *pension plan,* a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." *(Emphasis added.)*

**23.** 38 U.S.C. § 4303(4)(C): "Except as an actual employer of employees, an employee pension benefit plan described in section 3(2) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1002(2)) shall be deemed to be an employer only with respect to the obligation to provide benefits described in section 4318."

**24.** 38 U.S.C. § 4318(a)(1)(A): "... in the case of a right provided pursuant to an employee pension benefit plan ..., the right to pension benefits of a person reemployed under this chapter shall be determined under this section."

**25.** 38 U.S.C. § 4318(2)(A): "A person reemployed under this chapter shall be treated as not having incurred a break in service with the em-ployer or employers maintaining the plan by reason of such person's period or periods of service in the uniformed services."

**26.** 38 U.S.C. § 4318(2)(B): "Each period served by a person in the uniformed services shall, upon reemployment under this chapter, be deemed to constitute service with the employer or employers maintaining the plan for the purpose of determining the nonforfeitability of the person's accrued benefits and for the purpose of determining the accrual of benefits under the plan."

**27.** *Fahrenbacher and Sheehan v. Department of the Navy,* 85 M.S.P.R. 500, 510, ¶ 18 (2000) (allegations of denial of civilian employment based upon prior military service).

**28.** *See Crawford v. Department of Transportation,* 373 F.3d 1155 (Fed.Cir.2004) (when an employer denies credit for time spent as a cadet in the United States Coast Guard Academy prior to employment when calculating accrued leave time USERRA is not violated because a federal statute excludes all cadets from having time spent at an academy credited during retirement computations).

**29.** *See also Bordwine v. Oklahoma Firefighters Pension and Retirement System,* 2004 OK CIV APP 75, 99 P.3d 703 (Cert.den., Sept. 13, 2004).

**30.** Okla. Cons't Art. 2, § 7: "Due process of law. No person shall be deprived of life, liberty, or

Further, because USERRA was not shown to apply, the Act does not preempt Oklahoma statutes. As both Mullins' constitutional and preemption issues are moot, we proceed to examine Mullins' remaining contentions.

¶ 16 Mullins contends he was not obligated to comply with the Oklahoma Government Tort Claims Act (GTCA) because any claim made for the benefits in issue would have been denied based upon OPERS' policy to deny retirement credits when the prior service does not fall within the definitions of "war veterans" and "military service." Thus, argues Mullins, filing a GTCA claim would be a perfunctory act and the law does not require futile acts. As such, Mullins contends his failure to comply with the GTCA should be excused.

¶ 17 In *Apache*, the Oklahoma Supreme Court recognized that although "the law does not require one to do a vain or useless thing or to perform an unnecessary act to obtain relief" that equitable doctrine will not be invoked to block state statutes requiring pursuit of administrative remedies.[31] In *Bordwine*,[32] it was held: "Bordwine's tort claims ... against OFPRS, the Executive Director and the individual members of the Board of Trustees are barred by operation of the

Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, et. seq ..." Under the facts of this case and statutory mandates, Mullins' failure to comply with the GTCA is not excused.

¶ 18 We next address Mullins' contention that Trustees were not entitled to immunity. Generally, those who act on behalf of the State and its instrumentalities are immune from liability for such acts,[33] even when suit is based upon the failure to adopt or enforce a law.[34] There are statutory directives that when Trustees make decisions regarding the distribution of funds, they are carrying out lawfully assigned tasks,[35] are generally within the scope of employment,[36] and that when OPERS acts, its Trustees are not to be held personally liable.[37]

¶ 19 Individuals may, however, lose entitlement to immunity: "Although officers and employees of governmental agencies, including the State, are protected from tort liability while performing discretionary functions, such protection does not render such employees immune from liability for willful and wanton negligence."[38] Consequently, individuals who act in bad faith may lose their immunity from suit.[39] However, the

property, without due process of law;" *See also Ricks Exploration v. Oklahoma Water Resources Board*, 1984 OK 73, 695 P.2d 498, 504: ¶ 15.

31. *Apache Corporation v. State of Oklahoma ex rel. Oklahoma Tax Commission*, 2004 OK 48, 98 P.3d 1061, 1064.

32. *Bordwine v. Oklahoma Firefighters Pension and Retirement System*, 2004 OK CIV APP 75, 99 P.3d 703 (Cert.den., Sept. 13, 2004).

33. 51 O.S. § 152.1(A): "The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts;" and 51 O.S. § 163(C): "Suits instituted pursuant to the provisions of this act shall name as defendant the state or the political subdivision against which liability is sought to be established. In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant ..."

34. 51 O.S. § 155(4): "The state or a political subdivision shall not be liable if a loss or claim

results from: ... 4. Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;"

35. *Carswell v. Okla. State Univ.*, 1999 OK 102, ¶ 17, 995 P.2d 1118, 1123.

36. 51 O.S. § 152(9): " 'Scope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority ..."

37. 74 O.S. § 904(1): "The System may sue and be sued in its official name, but its officers, employees, and agents shall not be personally liable for acts of the System ...;" *See Bordwine v. Oklahoma Firefighters Pension and Retirement System*, 2004 OK CIV APP 75, ¶ 11, 99 P.3d 703 (Cert.den., Sept. 13, 2004).

38. *Neal v. Donahue*, 1980 OK 82, ¶¶ 19, 23, 611 P.2d 1125, 1129–1130.

39. *Pellegrino v. State ex rel. Cameron Univ.*, 2003 OK 2, ¶¶ 2–5, 63 P.3d 535, 537.

record in the present case reveals that Trustees did not personally vote to grant or deny Mullins retirement credits because Mullins never brought his claim before OPERS' Board. The record is also bare regarding any individual acts of the Trustees regarding adopting or applying the policy in issue. The record is certainly bare of willful, wanton or bad faith conduct by the individual Trustees. On such a barren record and in light of the numerous statutes conferring individual immunity, we find no error in granting Trustees immunity and dismissing them from the lawsuit.

¶ 20 Lastly, Mullins complains that the Order of the trial court contained resolution of an issue that was not raised or briefed. Mullins alleges, and Defendants do not contest, that Defendants drafted the Order, which is nearly identical to Defendants' previously filed brief. The trial court issued a Letter Ruling granting Defendants' Motion to Dismiss and requested Defendants' counsel to prepare an Order. The Order filed relies upon a ground for finding the individual Trustees were entitled to immunity: 74 O.S. § 904(1). We note, without passing judgment on whether something was inserted into the Order not actually ruled upon by the trial court, a general disapproval of such a practice, and note as well that § 904(1) is but one of many grounds on which Trustees are entitled to immunity.

¶ 21 The trial court's order is in accord with the governing law and should be, and is hereby, AFFIRMED.

HANSEN, J., and BUETTNER, C.J., concur.