**STATE of Delaware, et al., Plaintiffs,**

**v.**

**Dora Marie LILLARD, et al.,
Defendants.**

**STATE of Delaware, Colonial School
District and Red Clay School
District, Plaintiffs,**

**v.**

**Madelyn P. KOPEC and Carol A.
Reed, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: Jan 7, 1986.
Decided: Nov. 12, 1986.

Regina M. Mullen, and Susan Kirk-Ryan, Deputy Attys. Gen., for State of Delaware.

John J. Schmittinger, and Philip E. Herrmann of Schmittinger and Rodriguez, Dover, for Dora Marie Lillard and Nancy McKinnon.

David H. Williams, and Francis J. Jones, Jr. of Morris, James, Hitchens & Williams, Wilmington, for Colonial School District and Red Clay Consolidated School District.

Harvey B. Rubenstein, Wilmington, for Madelyn P. Kopec.

Thomas S. Neuberger, Wilmington, for Carol A. Reed.

BABIARZ, Judge.

These declaratory judgment actions have been consolidated for decision on cross motion for summary judgment. Each involves the question of the right of State employees to continue to receive supplemental compensation payments pursuant to 29 *Del.C.* § 5933.

The facts are easily told and not disputed. Defendants Lillard and McKinnon were both employed by the Department of Health and Social Services of the plaintiff State of Delaware. In March and June of 1975, respectively, defendants Lillard and McKinnon suffered compensable industrial accidents under the Delaware Workmen's Compensation Act and began to receive total disability benefits pursuant to 19 *Del.C.* § 2324 and supplemental compensation pursuant to 29 *Del.C.* § 5933. In April

1980, their employment was terminated by the State, and the supplemental compensation was discontinued, although they continued to receive workmen's compensation.

Defendant Kopec was a custodian employed by the plaintiff Colonial School District. Defendant Reed was a teacher employed by plaintiff Red Clay Consolidated School District. Both sustained compensable industrial accidents in 1980 and began to receive workmen's compensation and supplemental pay pursuant to 29 *Del.C.* § 5933 prior to July 1, 1981. Both have been terminated as employees but have received supplemental compensation through the date of termination. Workmen's compensation payments have not been terminated.

To fully understand the issues in this case, it is necessary to review the legislative and decisional history of the statute in question. These actions concern 29 *Del.C.* § 5933, the Merit System provision concerning employee leaves. Prior to 1975, § 5933 stated that "[t]he rules shall provide for annual, sick and special leaves of absence, with pay or at reduced pay." 56 *Del.Laws*, Ch. 376, § 6. Under the Workmen's Compensation Laws, 19 *Del.C.* Ch. 23, an employee incurring a work-related injury or disease receives compensation during the period of his or her incapacity. These compensation awards, however, are less than an employee's regular full pay. Pursuant to 29 *Del.C.* § 5933, and mindful of the compensation paid under the Workmen's Compensation Laws, Merit Rule 6.0310 was promulgated, which provided in part that "[a]n employee at his option may also use sick leave to provide full regular pay during periods when he is paid less than full pay under Workmen's Compensation provisions."

In 1975, the General Assembly determined that this use of sick leave was neither equitable nor fair when the job-related injury or disease did not arise out of direct employee negligence. Accordingly, § 5933 was amended by adding the following language:

No employee of the State of Delaware, including those exempt under § 5903, Title 29, shall be charged sick leave for any period of absence from work due to injury, personal injury, or occupational disease sustained by accident arising out of and in the course of actual employment with the State, providing such injury or illness is not the direct result of the employee's misconduct, and occurs during a period of employment for which the employee is entitled to receive pay.

60 *Del.Laws*, Ch. 247, § 1.

The State interpreted this amendment as requiring the State to pay the difference between Workmen's Compensation benefits and full pay to its disabled employees, instead of forcing those employees to use up their sick leave to obtain full pay. *Op. Att'y Gen.* No. 78–023.

The question then arose as to how long the State was required to pay this supplemental compensation. The State took the position that they need only pay the supplement as long as the injured person remained an employee and thus if an employee's employment with the State was terminated, the obligation to pay the supplementary compensation to that person likewise terminated. *Op.Att'y Gen.* No. 78–023. This view was rejected in *Young v. Milford School District*, Del.Super., C.A. No. 80C–MY–8, Wright, J. (May 14, 1981). It was there held that the termination of employment was irrelevant under the statute; thus, even though the employment terminated, the State was still required to pay supplemental compensation.

Shortly after the *Young* decision, in July of 1981, § 5933 was amended again to strike the sentence added by the 1975 amendment and substitute the following:

Whenever an officer or employee of the State, including those exempt from the classified service, qualifies for Workmen's Compensation benefits, such officer or employee, for a period not to exceed three months from the date such compensation begins, shall not be charged sick leave and shall receive from the State the difference, if any, between the total of: a) the amount of such compensation; b) any disability benefits received under the Federal Social Security

Act; and c) any other employer supported disability program, and the amount of wages to which the officer or employee is entitled on the date such compensation begins, provided the injury or disease for which such compensation is paid is not the direct result of such officer or employee's misconduct and occurs during a period of employment for which the employee is entitled to receive wages.

63 *Del.Laws*, Ch. 80, § 53.

In an earlier decision of this Court involving defendants Kopec and Reed, the issue was raised as to whether this amendment applied retroactively to cut off the payment of supplementary compensation to employees who had begun receiving such payments prior to the enactment of the amendment. Vice Chancellor Walsh, assigned to the case pursuant to Article IV, Section 13 of the Delaware Constitution, determined that "the supplemental compensation received by defendants did not rise to the level of a vested or inchoate property right which could not be terminated if a clear legislative intention to do so were manifested." *State v. Kopec*, Del.Super., C.A. No. 82C–JA–42 and 82C–JA–54, Walsh, V.C. (July 25, 1984), at 11. He went on to state that such compensation, though not a vested right, was a statutorily secured employment benefit the elimination of which should not be inferred absent a clearly expressed legislative intention. *Id.* He concluded that the amendment was prospective only, and did not serve to terminate the payments to defendants Kopec and Reed. He declined to rule, however, on whether terminating the defendants' employment would be sufficient to terminate the supplemental compensation payments because at that time the defendants were still school district employees.

Finally, on July 12, 1985 in response to the *Kopec* decision, the General Assembly amended § 5933 again by designating the former provisions as subsection (a) and adding subsection (b) which states:

(b) Subsection (a) of this section applies to officers or employees of the State who qualified to receive supplemental compensation under this section subsequent to June 30, 1981. Officers or employees of the State who qualified to receive supplemental compensation under this section prior to July 1, 1981, and remain entitled to receive such supplemental compensation, shall have such supplemental compensation terminated as of September 1, 1985.

20 *Del.C.* § 5933 (b).

All four defendants have had their employment terminated, and thus the issue reserved in the earlier *Kopec* decision is presented here: whether the termination of the defendants' employment terminates their right to receive supplemental compensation. In addition, defendants Kopec and Reed assert three more arguments: that their employment cannot be terminated either because of their disability or for the purpose of terminating the supplemental compensation;[1] that they are entitled to interest on the supplemental compensation due them;[2] and that they are entitled to accumulate both sick and annual leave for as long as they were on the school districts' payrolls.

As to the first issue, whether termination of employment can result in the discontinuation of supplementary compensation, defendants Lillard and McKinnon assert two main arguments. First, because § 5933 refers to Workmen's Compensation benefits as a trigger to the payment of supplemental compensation, § 5933 should be read *in pari materia* with the Workmen's Compensation Laws in 19 *Del.C.* Ch. 23, and that therefore supplemental compensation cannot be terminated until the Workmen's

---

**1.** Defendants Lillard and McKinnon assert that to the extent they were terminated for the purpose of terminating their right to receive supplemental compensation, that job termination is impermissible. They admit, however, that on the stipulated facts given for purposes of their motion for partial summary judgment the moti-

vation for the termination is not mentioned and that this issue must await trial.

**2.** The school district plaintiffs have agreed to pay this interest if payment of supplemental compensation is found owing. The State, however, denies that they must pay it.

Compensation benefits are terminated. Secondly, they assert that their right to supplementary compensation vested prior to either the 1981 or 1985 amendments, and thus those amendments cannot be used to cut off this vested right. This Court disagrees.

██ When determining whether to construe two statutes *in pari materia*, the critical issue is the characterization of the object or purpose of the statute, rather than the characterization of the subject matter. 2A N. Singer, *Sutherland Statutory Construction* § 52.03 (Sands 4th Ed. 1984) [hereinafter *Statutory Construction*]. "The adventitious occurrence of like or similar phrases, or even of similar subject matter, in laws enacted for wholly different ends will normally not justify applying the rule." *State v. DiCarlo*, N.J. Supr., 67 N.J. 321, 338 A.2d 809, 811 (1975). The 1975 amendment of the statute was for the purpose of relieving the perceived inequity of requiring employees to use up their sick leave in order to obtain their full pay level after suffering a compensable injury. This is not the same purpose as compensating for the injury itself. Also, as noted, the 1975 change was an amendment to an existing statute. "Since the purpose of an amendment is to make changes in the act being amended, great caution should be used in holding statutes in pari materia where an amendment is involved." *Statutory Construction, supra,* § 51.03. For these reasons, this Court declines to read 29 *Del.C.* § 5933 *in pari materia* with 19 *Del.C.,* Ch. 23.

Secondly, this Court has already decided, in *State v. Kopec*, Del.Super., C.A. No. 82C–JA–42 and 82C–JA–54, Walsh, V.C. (July 25, 1984) that supplementary compensation payments under § 5933 are not vested rights and may be altered if that is the clear intent of the legislature. *State v. Kopec, supra,* at 11. Thus, the defendants' vesting argument also falls.

This Court held in *Young v. Milford School District*, Del.Super., C.A. No. 80C–MY–8, Wright, J. (May 14, 1981), that supplemental compensation benefits under § 5933 are not terminated upon termination of employment status. Shortly after that decision, § 5933 was amended as stated previously and plaintiffs argue that this amendment abrogates its *Young* ruling. I disagree. As held in *State v. Kopec, supra,* the elimination of a statutorily secured employment benefit is not to be inferred lightly. The language of the 1981 amendment does not differ materially from the language of the 1975 amendment regarding employment status as a qualification for § 5933 benefits. Consequently I cannot conclude that the General Assembly intended to overrule *Young*.

██ Based on this, therefore, this Court finds that the termination of the defendants' employment is irrelevant to their right to receive supplementary compensation under the 1981 amendment to § 5933.

The present version of the statute, however, states very clearly that "employees of the State who qualified to receive supplemental compensation under this section prior to July 1, 1981, and remain entitled to receive such supplemental compensation, shall have such supplemental compensation terminated as of September 1, 1985." 39 *Del.C.* § 5933(b). This is precisely the type of clear legislative intent to terminate a statutorily secured employment benefit that the Court had in mind in the earlier *Kopec* decision. The four defendants involved here all began receiving supplemental compensation prior to July 1, 1981. Termination of their employment did not terminate their right to such compensation. As such they remained entitled to it at the time of the 1985 amendment. That amendment terminates the defendants' rights to receive the supplement as of September 1, 1985. To the extent that they have not been paid supplemental compensation up to September 1, 1985, that money is owed to them.

This being the case, the next question to be addressed is whether interest must be paid on the amount of supplemental compensation owed. The general rule, of course, holds that "a sovereign State is not obliged to pay interest on any award unless it has either expressly or by reasonable construction of a contract or Statute,

placed itself in a position of liability." *Department of Health and Social Services v. Crossan,* Del.Supr., 424 A.2d 3, 4 (1980). In *Crossan,* the Supreme Court held that a statute providing for the reinstatement of an employee "without loss of pay" did not allow the assessment of interest on that back pay against the State, because the meaning of the word "pay" covered only wages, salary, and the like, but not interest. No such limiting words are in § 5933. Rather, the present situation is more analogous to that of pension rights.

It has been held that "pensions are a part of the compensation of an employee to which ordinarily he is as much entitled as he is to the wages he is paid for the work actually performed by him." *Dorsey v. State ex rel. Mulrine,* Del.Supr., 283 A.2d 834, 836 (1971). When pension rights become vested, a contractual duty arises to make the pension payments when due. If the duty to pay is breached, interest will ordinarily run, commencing with when the payment was due. *Dorsey v. State ex rel. Mulrine,* Del.Supr., 301 A.2d 516, 518 (1972); *State ex rel. State Board of Pension Trustees v. Dineen,* Del. Ch., 409 A.2d 1256, 1261 (1979).

■ Likewise, the defendants' entitlement to receive supplemental compensation is a statutorily secured employment benefit. *State v. Kopec, supra,* at 11. While the defendants do not have a vested right in the continuance of that benefit, while it exists it is as much a part of the compensation of the employee as is pensions and wages. Here, the defendants' entitlement to the supplemental compensation fully matured prior to September 1, 1985, and became contractually due. Interest will therefore run from the dates the payments were due.[3]

Defendants Kopec and Reed contend that their employment may not be terminated because of their disability. While this Court's holding that the termination of defendants' employment is irrelevant for purposes of § 5933 may seem to render this issue somewhat moot, the question does have relevance with regard to the defendants' final argument that they should be permitted to accumulate sick and annual leaves for as long as they are on the payroll.

■ Defendants Kopec and Reed do not dispute that they are totally disabled and unable to perform the duties of their respective positions. The question is whether a State employee who cannot perform her duties because of a disability resulting from an injury that is not the direct result of her misconduct can be terminated. I hold that she can.

■ Defendant Reed was employed as a teacher. 14 *Del.C.* § 1420 states that a teacher may be terminated during the school year "for 1 or more of the following reasons: Immorality, misconduct in office, incompetency, disloyalty, neglect of duty or willful and persistent insubordination." In interpreting a statute, the words must be given their common and ordinary meanings. *Moore v. Chrysler Corporation,* Del.Supr., 233 A.2d 53, 55 (1967). *Webster's Third New International Dictionary* defines "incompetence" as having a "lack of physical, intellectual, or moral ability." Defendant Reed has lacked the physical ability to teach for a prolonged period of time. This is a sufficient basis for her termination.

■ Defendant Kopec is not a teacher, so the provisions of § 1420 do not apply to her. Moreover, as an employee of a school district she is not included under the Merit System rules. 29 *Del.C.* § 5903(12).[4] The

---

**3.** It should also be noted that the State itself initiated the suit in this Court. The Delaware Supreme Court has suggested that interest on a judgment "may well be applicable in an action against the State in which there is a general waiver of sovereign immunity and the State has submitted itself to all the rights, duties and obligations of an ordinary litigant." *Department of Health and Social Services v. Crossan,*

Del.Supr., 424 A.2d 3, 5 (1980). Because this Court has based its decision on narrower grounds, it need not decide whether the mere institution of a suit by the State constitutes such a general waiver.

**4.** 29 *Del.C.* § 5903 reads in pertinent part:
Unless otherwise required by law, as used in this chapter, "classified service" or "state

parties to this suit, however, have not cited to this Court any statutory or other authority relating to proper termination of State school district employees other than teachers. The Court is satisfied, however, that its holding that an employee may be terminated when the employee is totally disabled for a protracted period of time is at least consistent not only with the system of terminations for teachers under 14 *Del.C.* § 1420, but also with the provisions for termination of the Merit System employees. Merit Rule 14.0600, promulgated under 29 *Del.C.* § 5930,[5] allows the termination of an employee who has "the inability to perform the work of a position satisfactorily." Giving the words their normal meaning, it is clear that defendant Kopec, because of her disability, is unable to perform the work of her position satisfactorily. Her termination is therefore permissible.

The final question is whether defendants Kopec and Reed could accumulate their sick and annual leaves through the effective date of their termination. The plaintiffs have agreed that defendants Kopec and Reed may accumulate their sick leave for up to 120 days, pursuant to 14 *Del.C.* § 1318(a),[6] and be paid for up to 90 days upon retirement, should they be rehired by the State, pursuant to 14 *Del.C.* § 1318(g).[7] Thus the only real issue is the accumula-

tion of annual leave. The plaintiffs have asserted that teachers receive no annual leave, and thus there is none to accumulate. Defendant Reed has not disputed this. Therefore, the sole remaining question is whether defendant Kopec is entitled to accumulate her annual leave.

The Delaware Supreme Court, in *Tibayan v. Board of Education*, Del.Supr., 413 A.2d 889 (1980), considered the question of whether a teacher could continue to accumulate sick leave during a period of absence from work resulting from a job-related injury incurred without fault. The Court noted that 14 *Del.C.* § 1318(a) did not limit the right to accumulate sick leave to teachers who actually performed duties during the year. *Tibayan, supra,* at 890. As the teacher was on the State payroll and receiving full pay throughout the period, she was entitled to accumulate sick leave. *Id.* This result was reasonable because sick leave was "but one of several benefits that constitute the compensation paid to teachers." *Id.*

In the present case, there is a statute that allows a State school district employee to accumulate annual leave to a maximum of 42 days. 14 *Del.C.* § 1318(h).[8] The statute does not limit the right to accumulate annual leave to employees who actually perform duties during the year.

---

service" means all positions of state employment other than the following positions, which are excluded:

\* \* \* \* \* \*

(12) All employees of each state school district or special school district and of the school district of the City of Wilmington....

5. 29 *Del.C.* § 5930 provides:

The rules shall provide for discharge or reduction in rank or grade for cause after the probationary period for appointment or promotion is completed. The person to be discharged or reduced in rank for cause shall have the right of appeal as set forth in this chapter.

6. 14 *Del.C.* § 1318(a) provides:

Teachers and other school employees shall be allowed 10 days of sick leave per year with full pay; those teachers and other school employees employed 11 months a year shall be allowed 11 days of sick leave per year with full pay; and those teachers and other school

employees employed 12 months a year shall be allowed 12 days of sick leave per year with full pay. Any unused days of such leave shall be accumulated to the employee's credit up to a limit of 120 days.

7. 14 *Del.C.* § 1318(g) provides in pertinent part:

An employee retired subsequent to June 1, 1969, after serving in covered employment under Chapter 55 of Title 29, shall, on retirement, be paid for each unused sick leave day, not to exceed 90 days.

8. 14 *Del.C.* § 1318(h) provides:

The maximum amount of annual leave which an employee shall be permitted to accumulate shall be 42 days. At the end of each fiscal year, the accumulated annual leave of each employee shall equal not more than 42 days. Where, prior to the end of a fiscal year, an employee has accumulated more than 42 days of annual leave, such annual leave shall be adjusted to 42 days at the end of such fiscal year.

Defendant Kopec was on the State payroll until her termination on July 13, 1983. Like sick leave, annual leave is but one of several benefits that constitute the compensation paid to State school district employees. As with the sick leave in *Tibayan,* therefore, it is reasonable to allow the accumulation of annual leave up through the date that Kopec's employment was terminated.

IT IS SO ORDERED.